STUDEBAKER BROS. MANUF'G CO. *v.* ILLINOIS IRON & BOLT CO. *et al.*

*(Circuit Court, N. D. Illinois. April 21, 1890.)*

PATENTS FOR INVENTIONS—WANT OF NOVELTY.

 Thimble skeins of sheet metal for wagon axles, having been previously well-known, and made of cast metal of any shape, a bill for infringement of letters patent No. 256,744, issued to Joshua Sandage, April 18, 1882, for a wagon-axle skein, is demurrable for want of novelty; the alleged invention consisting in cutting a blank sheet of metal in such shape that, when rolled into cylindrical form, it will fit not only the spindle section of the axle, but also extend over the shoulder, with a wing along the under side of the axle, back of the collar.

In Equity. Demurrer to bill.

*Coburn & Thacher,* for complainant.

*J. H. Raymond,* for defendants.

BLODGETT, J. This is a bill in equity charging defendants with the infringement of patent No. 256,744, granted by the United States to Joshua Sandage, April 18, 1882, for a "wagon-axle skein," and praying for an injunction and accounting. Defendants have demurred to the bill on the ground that the patent in question, on its face, shows no patentable novelty in the device covered by the specifications and claims. The device described in the specifications and claims is a thimble skein for wagon axles produced from plate metal, and the specifications give instructions as to the shape into which a blank of plate metal like boiler iron is to be cut, so that, when bent or rolled around a mandrel or former of the conformation of the axle upon which the skein is to be used, its edges will come together where they may be either butt-welded or lap-welded. The skein described is so formed as to cover not only the spindle section of the axle, but to extend back so as to cover the shoulder of the axle, with a wing extending along the under side of the axle. There is no claim or statement in the patent that this shape for a thimble skein is new; and hence it will be assumed, for the purposes of this case, that the shape is old. It may also be assumed that it is part of the common knowledge that axle skeins have for many years been made of cast metal of such shape as was deemed desirable for their use, and that there was no difficulty in casting skeins which reach onto or cover the shoulder of the axle, or extend along the under side of the axle, back of the collar. The patentee inserts as part of his specifications a disclaimer as follows:

"I am aware that wagon-axle skeins have been made of a single piece of sheet metal; and hence, I make no broad claim to such construction of device, but restrict myself to certain improvements specified in the claims."

Assuming, then, as conceded, that thimble skeins made of sheet metal were old and well known when this inventor entered the field, and that such skeins had been made of cast metal of any desired shape, the question is, can there be any invention in cutting a blank sheet of plate metal in such shape as that, when rolled, or bent into cylindrical form, it will

fit, not only the spindle section of the axle, but also extend over the shoulder, with a wing along the under side of the axle back of the collar? To cut a piece of cloth or sheet metal into such form, as that, when its edges are brought together, bringing it into a semi-cylindrical form, it will fit an irregular surface, seems to me, requires only mechanical skill. Tailors and dressmakers do it when fitting sleeves for their customers garments, not by the exercise of invention, but by their acquired mechanical skill. The problem being given any skilled mechanic to cover a piece of wood or metal with an envelope of sheet or plate metal by bending it into the shape of the article to be covered, probably the first step would be to measure the article to be covered at various places, so as to determine the length and width of the blank to be cut at its corresponding places, and, after an approximation to the desired shape of the blank had been obtained by such measurements, probably a paper pattern would be cut out and wrapped about the article to be covered, and in this way a pattern of the desired blank would be obtained, not by invention, but by mechanical experiment. The problem to be solved is mechanical only, and does not, it seems to me, call into action that element of the mind which we call "inventive genius," which meets and overcomes a difficulty by an entirely new expedient, but simply and only demands the exercise of mere skill and deftness in fitting a piece of iron to a piece of wood. If this patentee had given instructions as to certain measurements to be made which would enable a workman to cut a blank which would always certainly fit an axle, then there might be some ground for saying that he had discovered a law of proportion which involved invention, but he has done no such thing in this patent. The most he has done is to tell us that, if we wish the skein to cover an enlarged surface back of the collar, the blank for that part must be cut correspondingly wider. It obviously required no inventive genius to to tell the public this. Any person, it seems to me, who was set to cover a section of a cone, which is about the shape of the spindle section of a wagon axle, with a sheet of plate metal, would know that his blank must be wider where it was intended to cover the larger end than the portion which was intended to cover the small end, and that the taper of his blank must correspond to the taper of the axle, and, if back of the axle there was an abrupt enlargement of the axle forming the shoulder, which he was also to cover, then there must be a correspondingly abrupt increase of the width of the blank at that point. This is all this patentee has done by his specifications and drawings; and in doing this, it seems to me, he has not gone out of the domain of common mechanical knowledge.

Therefore, while I am averse to sustaining demurrers, in this class of cases, which shall, in effect, say that the patent-office has issued a patent which is obviously, and from common knowledge, void for want of invention, yet, when a case is as plain as this seems to me to be, I think it the duty of the court to do so, and thus save the parties the extraordinary expenses and delay which almost uniformly attend patent litigation. The demurrer is sustained, and the bill dismissed for want of equity.