AMERICAN FIBER–CHAMOIS CO. v. WILLIAMSON et al.

SAME v. BUCKSKIN–FIBER CO. et al.

(Circuit Court, N. D. Ohio, E. D.    June 5, 1895.)

1. PATENTS—INFRINGEMENT SUITS—JURISDICTION AND PRACTICE.
   The power of the courts to declare, on demurrer to the bill, that a patent sued on is invalid on its face for want of novelty and utility, is well settled; but such power should not be exercised except in a very plain case, and where the conduct of the complainant shows that the suit is brought to harass mere dealers, and not manufacturers.

2. SAME—FLEXIBLE PAPER.
   The McLauchlin patent, No. 511,789, and the Scott patent, No. 216,108, relating to processes of manufacturing flexible paper, are void for want of novelty and invention.

These were suits for infringement of two patents relating to the process of manufacturing flexible paper.

Thos. J. Johnston and Phillip, Munson & Phelps, for complainant.
M. D. Leggett and A. E. Lynch, for respondents.

RICKS, District Judge.    These are two bills filed by the complainant to sustain the validity of letters patent No. 511,789, dated January 2, 1894, issued to John C. McLauchlin.    They were filed, one in March and the other in April last.    Answers were filed to the same, denying the validity of the patent and denying infringement. The defendants sought to speed these cases as rapidly as possible, and waived the usual time for answer, and served the complainant with notice to file its replication, or they would move to dismiss the bills for want of prosecution.    Thereupon the complainant asked leave to dismiss the bills without prejudice, and at the same time file two new bills against the same defendants, the new bills differing from the old ones in the respect that letters patent No. 216,-108, dated June 3, 1879, issued to T. Seymour Scott, for an improvement in the manufacture of flexible paper, had since the filing of the former bills been assigned to the complainant, and the new bills were therefore based upon both the McLauchlin and the Scott patents. The defendants, in view of the action of the plaintiff in asking for leave to dismiss its original bills without prejudice, prayed leave of

the court to withdraw their answers to the original bills, and filed a demurrer to both the original and new bills upon the ground that the patents were void upon their face for want of novelty and utility. Counsel for the complainant contend that this is a very summary and new method of disposing of patent cases, and insist upon the court's overruling the demurrers and allowing the cases to take their usual course, in order that the rights of the plaintiff may be determined after evidence has been filed and the usual time for preparation given.

In the first place, the right of the court to dispose of such cases upon demurrer seems to be well settled. In the case of West v. Rae, 33 Fed. 45, Judge Blodgett said:

In the light of these authorities, I cannot see why, in a suit for infringement of a patent so clearly and baldly void as this, the court ought not to save the defendant from the vexation and expense of a trial upon proofs by sustaining a demurrer to the bill. If, after a case reaches the supreme court, that court can, from its common knowledge, without reference to the pleadings and proofs, but merely from an examination of the patent itself, say that the patent is void, I see no reason why the court of original jurisdiction cannot do the same. The demurrer is therefore sustained, and the bill dismissed for want of equity.

In Studebaker Bros. Manuf'g Co. v. Illinois Iron & Bolt Co., 42 Fed. 52, Judge Blodgett again says:

This is a bill in equity charging defendant with the infringement of patent No. 256,744, granted by the United States to Joshua Sandage, April 18, 1882, for a "wagon-axle skein," and praying an accounting. Defendants have demurred to the bill on the ground that the patent in question on its face shows no patentable novelty in the device covered by the specification and claims.

The court, after comparing the patented device with the state of the art at the time the patent was granted, reached the conclusion that the patentee "had not gone out of the domain of common mechanical knowledge," and sustained the demurrer in the following language:

Therefore, while I am averse to sustaining demurrers in this class of cases, which shall, in effect, say that the patent office has issued a patent which is obviously, and from common knowledge, void for want of invention, yet, when a case is as plain as this seems to me to be, I think it the duty of the court to do so, and thus save the parties the extraordinary expenses and delay which almost uniformly attend patent litigation. The demurrer is sustained, and the bill dismissed for want of equity.

This practice is further clearly sustained by a decision of the supreme court of April 22, 1895, the title of which is not now before me. In considering the case the supreme court ignored the record of the court below entirely, and decided the case upon the faces of the patents, holding that the patents were invalid for want of patentable invention. The case came from the circuit court of the United States for the Northern district of California. The supreme court said:

For the reasons above given, we think all these patents are invalid, and that the demurrer to the bill should have been sustained in the court below. Locomotive Works v. Medart, 15 Sup. Ct. 745.

I agree fully with Judge Blodgett that patent cases should not be disposed of upon demurrers to the bill for the reason that the pat-

ents are void upon their face, unless the cases are very plain, and the conduct of the parties in litigation shows that they are brought for the purpose of harassing those who are simply dealers and not manufacturers. The process covered by the patent sued upon is for making a flexible paper lining, a large demand for which has lately grown up out of the new style of making ladies' dresses. The great demand will probably be of short duration, because when the style of dress changes the use of the paper will be dispensed with. It is for this reason that the complainant is bringing a large number of suits throughout the United States, and they are directed mainly against dealers who are handling this article as a matter of trade.

Some years ago, when the inventor of a patent hay fork instituted a large number of suits in this court against farmers who were mere users, Judge Baxter stayed the proceedings until the complainant should have time to proceed against the manufacturer, it appearing by affidavit that the manufacturer was perfectly solvent, and within the reach of a court of competent jurisdiction. · He did this upon the theory that, while the statute gave the complainant the right to sue the user, when suits of that kind were instituted in great numbers it was evident that the complainant's purpose was to force the defendants to settle because of the expenses of making a defense. If the patent was valid, and the users were infringers, the judge contended that the suit ought to be brought against the manufacturer, who had both the means to respond in damages and the means and opportunity for making a full defense and testing the merits of the patent upon a fair trial. In this case the application of the complainant to dismiss the suits first instituted without prejudice, and immediately filing the new bills, shows a disposition to annoy the defendants by vexatious litigation. The bills in the original suits could have been amended, or supplemental bills could have been filed. The defendants' desire to speed the cases, as shown by the course of their defense, would have waived any possible ground of demurrer, and the cases would have been brought to a speedy hearing upon the merits.

But it is obvious to my mind that these patents are absolutely void. The process covered by the patents is old, and was well known and described by scientific works long before the complainant's patent was applied for. For example, in the Polytechnic Review, published as early as 1877, a process for making paper to be used as a substitute for cloth for umbrellas, rain coats, and even for dress cloth, was recognized. The process is described as follows:

This cloth is generally made of paper alone, by beating it to make it soft, and impregnating it with gummy substances to make it more resistant to the action of water.

Again, in the Encyclopædia of Chemistry published in 1879, the mode of making paper cloth, warranted to wash, as made in Japan, is described. The paper is made out of vegetable substance, and it describes a process very similar to that set forth in the patent. Knight's American Mechanical Dictionary, published in 1875, by illustration and description shows machines used for rolling leather

similar to the machine used in rolling the paper pulp or Manilla paper as described in the complainant's patent.

There is no patent claimed on the substance used in making this flexible paper; there is no patent claimed on the machinery used for rolling the pulp or moistened paper; there is no patent claimed for using the machine and paper together. The patents have not gone out of the domain of common mechanical knowledge, which is within the judicial knowledge of the court, and I think, therefore, they are absolutely void upon their face. The demurrer to the four bills will be sustained, and the suits dismissed.