## NEW YORK SCAFFOLDING CO. v. WHITNEY.†

(Circuit Court of Appeals, Eighth Circuit. May 12, 1915.)

No. 4215.

(*Syllabus by the Court.*)

1. PATENTS ⬦═26—RIGHT TO SECURE—COMBINATION OF OLD ELEMENTS.

A new combination of old mechanical elements, whereby a new and useful result is secured, or an old result is attained in a more facile, economical, and efficient way, may be protected by a patent as securely as a new machine or composition of matter.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⬦═26.]

2. PATENTS ⬦═17, 18—RIGHT—SIMPLICITY.

The simplicity of a combination or machine is no bar to its patentability. If those skilled in the mechanical arts have failed after repeated efforts to discover a certain new and useful combination or improvement, it may be safely inferred that he who makes the discovery is entitled to protection as an inventor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 16–18; Dec. Dig. ⬦═17, 18.]

3. PATENTS ⬦═26—RIGHT TO SECURE—GRADUAL ADVANCE—INDEPENDENT INVENTION.

Where the advance toward the thing sought is gradual, and several inventors independently form several combinations, which accomplish the general result with varying degrees of operative success, each is entitled to his own combination, as long as it differs from those of his competitors and does not include theirs.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⬦═26.]

4. PATENTS ⬦═26—RIGHT TO SECURE—COMBINATION OF OLD ELEMENTS.

It is not necessary, in order to escape the defense of an aggregation of elements and to insure the patentability of a combination of old elements, that each element should, in addition to performing its own function, modify the function performed by one or more of the others.

It is sufficient, if there is a new combination of old mechanical elements, and if the elements thus combined are capable of producing a novel and useful result, or an old result in a more facile, economical, or efficient way.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⬦═26.]

5. PATENTS ⬦═26—PATENTABLE COMBINATION—CHANGE OF LOCATION OF ELEMENTS.

A new combination of old mechanical elements, wherein, by a different location of one or more of the elements, a new and useful result is attained, or an old result is produced in a better way, is patentable.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⬦═26.

Patentability of combinations of old elements as dependent on results attained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

6. PATENTS ⬦═259—"CONTRIBUTORY INFRINGEMENT"—PRESUMPTION.

Contributory infringement is the intentional aiding of one person by another in the unlawful making, selling, or using of a third person's patented invention.

One who makes or sells one or more elements of a patented combination, with the intention or for the purpose of bringing about its or their use

⬦═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

† Rehearing denied August 23, 1915.

in an infringing combination, is guilty of contributory infringement, and is equally liable with him who in fact organizes and uses the complete combination.

One who makes and sells articles which are only adapted to be used in a patented combination will be presumed to intend the natural consequences of his act. He will be presumed to intend that they shall be used in the combination patented.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 400–402; Dec. Dig. 259.

For other definitions, see Words and Phrases, First and Second Series, Contributory Infringement.]

7. PATENTS 328—VALIDITY.

Claims 1 and 3 of letters patent No. 959,008, for an improved scaffold supporting means, issued on May 24, 1910, to Henderson, secure useful and patentable combinations.

8. PATENTS 259—INFRINGEMENT.

One who makes and sells such hoisting devices and frames therefor as are portrayed in figure 1 in the patent to Whitney, No. 998,270, issued July 18, 1911, with the knowledge that they have been used, and the intention that they shall be used, in combinations with cross pieces and floor pieces of scaffolds, such as are described in claims 1 and 3 in patent No. 959,008, issued May 24, 1910, to Henderson, is guilty of contributory infringement of those claims.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 400–402; Dec. Dig. 259.]

9. PATENTS 168—ABANDONMENT OF CLAIM—ACQUIESCENCE IN REJECTION—ESTOPPEL.

While a patentee, who acquiesces in the rejection of his claim, and abandons it on references cited in the Patent Office, and accepts a patent on an amended claim, is thereby estopped from maintaining that the latter claim covers the combination shown in the references, and that it has the breadth of the abandoned claim that was rejected, that is the limit of the estoppel. One who does not abandon, but insists upon and sustains, his claim, is not estopped; and one who acquiesces in the rejection of his claim because it is said to be anticipated by other patents or references is not thereby estopped from claiming and securing by an amended claim every novel and useful improvement that is not described in those references.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. 168.]

Smith, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Nebraska; Page Morris, Judge.

Suit by the New York Scaffolding Company against Egbert Whitney. From a decree for defendant, the Scaffolding Company appeals. Reversed, with directions.

Paul Bakewell, of St. Louis, Mo., and C. P. Goepel, of New York City, for appellant.

James A. Carr, of St. Louis, Mo. (T. Percy Carr, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. The New York Scaffolding Company, the owner of letters patent No. 959,008, for an improved scaffolding

supporting means, issued May 24, 1910, to E. H. Henderson, on an application filed June 19, 1909, brought a suit against Egbert Whitney for contributory infringement of claims 1 and 3 of its patent by the manufacture and sale of the hoisting device and the frame thereof, described in the patent to Whitney issued July 18, 1911, on an application filed January 28, 1911. There was a decree for the defendant in the court below, which this appeal challenges. The defenses were, first, invalidity of Henderson's patent on account of (a) anticipation; (b) lack of invention; (c) aggregation, rather than patentable combination; and, second, noninfringement.

Several patents were introduced in evidence to prove anticipation, but it is unnecessary to consider more than two, the patent No. 382,-252, to Bowyer and Casperson, for an improvement in painter's stages, issued May 1, 1888, and the patent to William J. Murray, for an improvement in adjustable scaffolds, issued May 28, 1907, for, if neither of these anticipates, there is none that does. The desideratum sought by Henderson was a simple, economical, and efficient hoisting device and the frame therefor to enable workmen constructing large buildings to raise and lower the scaffolds on which they were working from their stations thereon, so constructed and combined with the cross pieces and floor pieces of the scaffold that the hoisting device and frame would not obstruct any portion of the platform of the scaffold, and that the combination of the hoisting device and its frame with the cross pieces and the floor pieces should be detachable without removing rivets or fastenings of cross pieces to the frame, or of the floor pieces to the cross pieces, to the end that the combination could be easily and quickly knocked down, removed, and set up again in another place. The principle and the method of combining the mechanical elements by which he reached the result he sought was to locate a hoisting frame, carrying a drum and a shaft gearing therewith operated by a detachable crank, broadside to the wall of the building at the end of each cross piece, so that neither the frame nor its hoisting device, nor the crank, would obstruct any portion of the scaffold when the crank was not in use, to support the cross pieces bearing the floor pieces on the lower ends of the frames, without fastening them thereto, so that they could be removed and replaced without removing or replacing rivets or fastenings.

The means he devised to effectuate the principle of his combination were these: To a drum, borne by the sides of the frame of each hoisting device, a cable, depending from the overhanging portion of an outrigger fastened on the top, or on some other high portion of the building, was attached. The frame of the hoisting device was preferably formed by bending a piece of bar iron into the form of the letter U, the lower end of which passed around and supported one end of a cross piece without being fastened thereto. Supported in and extending between the upwardly extended ends of the frame he placed a round bar, which formed the support of the drum to which the cable was fastened. On one end of the drum was a gear wheel, which meshed with a pinion revolubly supported in and between the upwardly extended arms of the frame. This shaft was squared at its ends, so

that the crank could be placed on either end without fastening it there, and could be used to drive the pinion and the drum and to raise or lower the scaffold, and then could be removed, without removing any fastening, in order to avoid any obstruction thereby of the platform of the scaffold. The upper ends of the frame were securely held in place by means of a bolt which extended through and between them. One of these frames, with its hoisting device, was placed at each end of each cross piece, and thus at least four of them were necessary to support and operate a scaffold, and as many more could be used as the size of the building and the extent of the work demanded. The claims in suit are:

"1. A scaffold consisting in the combination of cross beams, floor pieces extending between such beams, and a hoisting device associated with each end of each beam, each hoisting device consisting of a continuous U-shaped metal bar extending around the under side of and upward from the associated beam, and a hoisting drum rotatably supported by the side members of such bar."

"3. A scaffold consisting of a plurality of U-shaped bars arranged in pairs, a cross beam laid in and extending between each pair of such U-shaped bars, a floor laid upon said cross-beam, a drum rotatably supported between the upwardly extending side members of each of said U-shaped bars, and means for controlling the rotation of said drum."

The device patented to Bowyer and Casperson is a painter's stage, consisting of the combination of a plank, each end of which is supported by a bar secured to the lower ends of the vertical sides of a frame which carries a drum and a shaft operated by a crank and bearing a pinion meshing with gearing on the drum, to which a cable or rope, depending through pulleys and other familiar devices from a hook on the top of the cornice of a building, is attached. By the use of two of these frames and the hoisting devices, painters, by turning the cranks, could operate the drums and raise or lower their staging and themselves.

The patent to Murray discloses an inverted U-shaped frame bearing in and between its vertical sides a drum, to which a depending cable is attached, and a gear wheel on the drum, with which a pinion on a shaft, operated by a crank and supported in and between the vertical sides of the frame, meshes. By turning the crank the frame and hoisting device may be raised and lowered. This patent portrays a pair of these frames and hoisting devices, one at each end of each cross piece, which supports the floor pieces of the scaffold. These frames, however, are not placed with their broad sides, but with their narrow edges, to the wall of the building, so that the cross pieces used with these devices must necessarily be as much longer than those required for the use with Henderson's combination as twice the breadth of the frames is greater than twice their thickness, or the frames must be placed over and will obstruct the platform of the scaffold. In the combination of Murray the ends of the cross pieces do not rest unfastened upon the lower bends or bars of the hoisting frames, but they are rigidly secured by rivets or like fastenings to the lower ends of the vertical sides of the frame which supports them, so that, in order to move the scaffold and to use it in another locality, it is necessary to remove the rivets or fastenings and then rivet or fasten

the cross pieces and frames together again, or to remove a cross beam with the two hoisting devices and their frames fastened thereto in one cumbersome mass.

[1] Do the combinations of Bowyer and Casperson, and of Murray, anticipate and annul the patent of the combinations of claims 1 and 3 of Henderson's patent? His patent is for a combination. It is not for a new machine, or for new mechanical elements, but for a new way of combining old mechanical elements. And a new combination of old mechanical elements, whereby an old result is attained in a more facile, economical, and efficient way, or whereby a new and useful result is secured, may be protected by a patent as securely as a new machine or composition of matter. Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 443, 31 Sup. Ct. 444, 55 L. Ed. 527; Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U. S. 301, 318, 29 Sup. Ct. 495, 53 L. Ed. 805; Thomson v. Citizens' Nat. Bank, 53 Fed. 250, 3 C. C. A. 518; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 707, 45 C. C. A. 544, 558; Ide v. Trorlicht, Duncker & Renard Carpet Co., 115 Fed. 137, 141, 53 C. C. A. 341, 345; Kinloch Telephone Co. v. Western Electric Co., 113 Fed. 659, 665, 51 C. C. A. 369, 375; Anderson v. Collins, 122 Fed. 451, 459, 58 C. C. A. 669, 677. Henderson's method of combination made the use of scaffolds in the construction of large buildings easier, more economical, and more efficient than those of prior methods, in that it avoided obstruction of the scaffolds by the hoisting devices, their frames, or their cranks, shortened the cross pieces necessary to support the floor pieces of the scaffolds by the difference between twice the breadth and twice the thickness of the hoisting devices and their frames, and in that it enabled the workmen to knock down, move, and again set up the scaffolds, hoisting devices, and frames without unfastening and again riveting together cross pieces and hoisting frames, or handling in one cumbersome whole a cross piece riveted to two frames bearing their hoisting devices. It is frequently necessary in the construction of buildings to take down and move the scaffolds of the workmen from place to place, and Henderson's new combinations, now that they have been made, present distinct and obvious advantages over those of Bowyer and Casperson, and Murray, in simplicity, economy, and efficiency. They were neither disclosed nor suggested by Bowyer and Casperson, or by Murray, and neither their patents nor any other patents in the prior art anticipated them.

Did the new combinations of Henderson have such novelty and utility as to make them patentable? Their utility is established by the testimony of witnesses, and by the fact that Whitney himself, after the patent to Henderson, had been allowed, made an application for a patent upon them which was rejected upon Henderson's patent, and Whitney has since, by the construction of his hoisting device and his frame, attempted to appropriate to himself the principle and mode of operation and their advantages, which were secured to Henderson by his patent of the combinations. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 440, 31 Sup. Ct. 444, 55 L. Ed. 527.

[2, 3] Did the combinations of Henderson have the attribute of patentable novelty? They disclose simple and useful improvements. Their simplicity, however, is no bar to their patentability. "The fact that the invention seems simple after it is made," says the Supreme Court, "does not determine the question; if, this were the rule, many of the most beneficial patents would be stricken down. It may be safely said that if those skilled in the mechanical arts are working in a given field, and have failed after repeated efforts to discover a certain new and useful improvement, that he who makes the discovery has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor." Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034; Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 434, 435, 31 Sup. Ct. 444, 55 L. Ed. 527. The quotation states the case which the history of the prior art disclosed by the record in hand presents. Moreover, the combination of Henderson "possesses such an amount of change from the prior art as to have received the approval of the Patent Office and is entitled to the presumption of invention which attaches to a patent." Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 434, 441, 31 Sup. Ct. 444, 55 L. Ed. 527. The attempt of the defendant below to patent to himself the combinations of Henderson after the latter had secured them, and the defendant's imitation of them in the devices he now makes and sells, substantially adds his testimony to the other proof of their patentability. The remarks of the Supreme Court in Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 440, 31 Sup. Ct. 444, 55 L. Ed. 527, are not inapplicable here. "It is conceded," said that court, "as we have said, that his invention is a narrow one—a step beyond the prior art—built upon it, it may be, and only an improvement upon it. Its legal evasion may be the easier (Railway Company v. Sayles [97 U. S. 554, 24 L. Ed. 1053]), and hence we see the strength of the concession to its advance beyond the prior art, and of its novelty and utility by the Rubber Company's imitation of it."

The devices of Bowyer and Casperson, of Murray, and of the prior art were and are open to the defendant below. If there was no improvement in the combinations of Henderson, if the combination of Murray, or of any other patentee, was in effect the same as and equally useful with Henderson's, why did not the defendant claim and use it? The record discloses the fact that during many years mechanics and inventors had been using their skill and their genius to discover and to construct the most simple, inexpensive, and efficient combinations of hoisting devices, frames therefor, cross pieces, and floor pieces for the scaffolds of workmen, that the advance in the art had been made step by step, and that many inventors and mechanics had contributed different combinations whereby scaffolds could be made, raised, lowered, and used with different degrees of success. This case, therefore, ranges itself under the familiar rule that where the advance toward the thing desired is gradual, and several inventors form different combinations, which accomplish the result sought with varying degrees

of operative success, each is entitled to his own combination, as long as it differs from those of his competitors and does not include theirs. Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 215 Fed. 362, 369, 131 C. C. A. 504; Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; McCormick v. Talcott et al., 20 How. 402, 405, 15 L. Ed. 930; Stirrat v. Excelsior Mfg. Co., 61 Fed. 980, 981, 10 C. C. A. 216, 217; Griswold v. Harker, 62 Fed. 389, 391, 10 C. C. A. 435, 437; Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 440, 23 C. C. A. 223, 231; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 712, 45 C. C. A. 544, 563.

The facts, considerations, and rules of law to which reference has now been made have forced our minds to the conclusions that the combinations of claims 1 and 3 of Henderson's patent were novel and useful, that their conception and application to the actual use of raising, lowering, and moving workmen's scaffolds rose to the dignity of invention, and endowed them with the attribute of patentability.

[4] Before reaching this conclusion the argument of counsel for the defendant that these combinations were not patentable, because they were mere aggregations of old elements, and the leading authorities upon that subject, received attention and meditation. The rule is now well established, by sound reasons and the great weight of modern authority, that it is not requisite to the patentability of a combination of old mechanical elements that each element should, in addition to performing its own function, modify the function performed by one or more of the other elements of the combination. It is sufficient if the combination of the old elements is new, and if the combined elements are capable of producing a novel and useful result, or an old result in a more facile, economical, or efficient way. National Cash Register Co. v. American Cash Register Co., 53 Fed. 367, 371, 3 C. C. A. 559, 563; Pelton Water Wheel Co. v. Doble, 190 Fed. 760, 766, 111 C. C. A. 488, 494; International Mausoleum Co. v. Sievert, 213 Fed. 225, 229, 129 C. C. A. 569; Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 215 Fed. 263, 274, 131 C. C. A. 504; Sanders v. Hancock, 128 Fed. 424, 434, 63 C. C. A. 166, 176; Dayton Malleable Iron Co. v. Forster Waterbury & Co. (C. C.) 153 Fed. 201, 204; W. W. Sly Mfg. Co. v. Russell & Co., 189 Fed. 61, 66, 110 C. C. A. 625, 630; Burdett-Rountree Mfg. Co. v. Standard Plunger Elevator Co. (C. C.) 196 Fed. 43, 46.

[5] A new combination of old elements, in which, by a different location of one or more of the elements, a new and useful result is attained, or an old result is produced in a better way, is patentable. Sanders v. Hancock, 128 Fed. 424, 434, 63 C. C. A. 166, 176; Star Brass Works v. General Electric Co., 111 Fed. 398, 49 C. C. A. 409; Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 53 C. C. A. 36; Stillwell-Bierce & Smith-Vaile Co. v. Eufaula Cotton Oil Co., 117 Fed. 410, 54 C. C. A. 584. The combinations of Henderson's first and third claims were new. No one had made them before he disclosed them. They were not described or suggested in the prior art. They placed the old elements, hoisting device, and frame therefor in a new

location broadside to the wall, a location wherein the connections between the lower parts of the frame were fitted to receive, and so that they did receive, and safely support, without fastening the ends of the cross pieces sustaining the floor pieces of the scaffold, and by the new relation and the coaction of the old elements in these new combinations a more facile, economical, and efficient way to make, operate, and move scaffolds for workmen, a way in which hoisting devices and frames could be used without obstructing the platforms of the scaffolds while work on them was in progress, a way in which hoisting devices, frames therefor, and cross pieces could be combined to support, raise, and lower a scaffold without riveting or securing cross pieces to frames, and so that the hoisting and supporting apparatus could be knocked down, removed, and set up, without unfastening or refastening cross pieces to hoisting frames. These new and beneficial results were the effects, not of the separate performance by each of the old elements of its own function, but of the new relation and the new method of combination of the old mechanical elements, and of their co-operation in that relation in the combinations of Henderson. Those combinations, therefore, fall well within the line of patentability established by reason and authority.

[6] Did the defendant infringe these combinations of Henderson? It is not claimed that he made, sold, or used the entire combination of either of the claims in suit, but that by the manufacture and sale of his hoisting devices and his frames therefor he is guilty of contributory infringement. Contributory infringement is the intentional aiding of one person by another in the unlawful making, or selling, or using of a third person's patented invention. Henry v. Dick, 224 U. S. 1, 32, 33, 34, 32 Sup. Ct. 364 (56 L. Ed. 645, Ann. Cas. 1913D, 880). "He who makes and sells one or more elements of a patented combination, with the intention and for the purpose of bringing about its or their use in an infringing combination, is guilty of contributory infringement, and is equally liable with him who in fact organizes and uses the complete combination." James Heekin Co. v. Baker, 138 Fed. 63, 66, 70 C. C. A. 559, 562. One who makes and sells articles which are only adapted to be used in a patented combination will be presumed to intend the natural consequences of his acts; he will be presumed to intend that they shall be used in the combination of the patent. It is the duty of one who is offering for sale one or more articles, which he intends shall be used in combinations which, if unlicensed, will infringe a patent, to see to it that such combinations which he thus promotes and induces are lawfully organized. Thomson-Houston Electric Co. v. Ohio Brass Co., 80 Fed. 712, 721, 26 C. C. A. 107, 116. The foregoing rules of law are indisputable. They are supported by a multitude of authorities, among others by American Graphophone Co. v. Hawthorne (C. C.) 92 Fed. 516, 517; Thomson-Houston Electric Co. v. Kelsey Electric Ry., etc., Co., 75 Fed. 1005, 1007, 1008, 22 C. C. A. 1, 3, 4; Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 297, 25 C. C. A. 267, 276, 35 L. R. A. 728; Johnson v. Foos Mfg. Co., 141 Fed. 73, 88, 72 C. C. A. 105, 120; Leeds & Catlin Co. v. Victor Talking Machine Co., 154 Fed. 58, 59, 83 C. C. A. 170, 171, 23 L. R. A. (N. S.) 1027.

[7, 8] The distinguishing characteristic of Henderson's combination, the new location and method of combining the elements which secured the advantages of these combinations, was the location of the hoisting device and its frame broadside to the wall, and the provision of substantial connections between the lower ends of the vertical side pieces of his hoisting frames upon which the ends of the cross pieces could rest without fastenings. This was the principle of his new combinations of hoisting devices and their frames with the cross pieces and floor pieces of the scaffolds. The defendant, Whitney, has embodied this principle in hoisting devices and their frames which are adapted to be used in Henderson's combination, and these he is manufacturing and selling. His counsel argue that a combination of these hoisting devices and their frames with the cross pieces and floor pieces of scaffolds would not infringe the combinations of Henderson, because Henderson's drum is supported by a shaft whose ends extend through perforations in the vertical side pieces of his frames, while Whitney's drum is mounted on brackets secured to the vertical side pieces of his frames, because Henderson's frames for his hoisting devices are metal bars bent in the form of the letter U, while Whitney uses metal bars bent in the form of inverted letters U, and because Henderson uses a shaft operated by a crank to drive his drum, while Whitney uses a lever. But a crank on a shaft is a lever. Whitney has headed and thereby fastened into loops in the lower ends of the vertical sides of each of his inverted U hoisting frames a supporting rod of metal connecting the vertical sides of his frames, and with these rods he supports the cross pieces of the scaffold without fastening the latter to the frames, just as the lower parts of Henderson's frames in the form of upright letters U support such cross pieces. A drum mounted on brackets fastened to the vertical sides of one of these hoisting frames is in mechanical effect the same thing as a drum mounted on a shaft whose ends extend through perforations in such vertical sides. ·

These changes from the combinations of Henderson which Whitney has made are but the substitution of plain mechanical equivalents, and they have no tendency to relieve the combination of his hoisting devices and frames with the cross pieces and floor pieces of a scaffold of infringement of Henderson's patented combinations. Whitney's hoisting devices and frames still remain the mechanical equivalents of those of Henderson. In combination with the cross pieces and floor pieces of a scaffold they embody the new principle and method of Henderson. By their necessary location in their use by workmen constructing large buildings with their broadsides to the wall (and they could not be used for such scaffolds with their edges to the wall, because thus placed they would furnish no support for the cross pieces), they prevent obstruction of the platforms while the employés are at work and furnish secure supports for the cross pieces without fastening the latter to the frames, so that the scaffolds can be knocked down, removed, and set up again without removing or replacing such fastenings. By the use of the new principle and way of combining the old elements which Henderson disclosed they accomplish, in combination with the cross pieces and floor pieces of a scaffold, by the same mechanical means, the same bene-

ficial results which the hoisting devices and frames of Henderson attained in his patented combinations, and they fail to escape infringement thereof.

The combinations of Henderson are unique in this: That the principle of his invention is embodied in the hoisting devices and their frames and their appropriate location in the combinations to such an extent that any contractor or other person provided with them and taught their proper location can readily supply the cross pieces and floor pieces and make and use the patented combinations. It is the hoisting devices and their frames that the defendant Whitney makes and sells. The expert introduced on his behalf testified that the Whitney machine was the same as that disclosed in the Whitney patent in all essential respects. Whitney himself testified that he had disseminated a circular which contained a cut of his hoisting device and frame during the year 1912, that he had seen his hoisting devices and frames in use and shown contractors the manner of their installation and operation, and that he was ready to supply them. At least two pairs of hoisting devices and their frames, all placed broadside to the wall of the building, each pair supporting a cross piece, are indispensable to the combinations of Henderson to construct scaffolds for workmen on large buildings. Figure 1 of the patent to Whitney discloses four of his hoisting devices and their frames so located, combined with cross pieces and floor pieces in the new way disclosed by the patented combinations of Henderson. Whitney testified that his hoisting devices and their frames were adapted to be used in that manner, and that they were equally adapted to be used by laying a plank across from one machine to another. But their use by laying a plank from one machine to another would be futile and impractical in the construction of large buildings, because the platform would be too narrow, and the hoisting units would necessarily hang across the plank with their edges to the wall, and would obstruct the passage of the workmen beyond the plank. The facts that in his later patent Whitney portrayed in his Figure 1 his hoisting devices and their frames in use in the combinations of claims 1 and 3 of Henderson's patent, that they were adapted to use in those combinations, that he had advertised them, had explained to contractors the manner of their installation and operation, had seen them in operation, and that he is here opposing an injunction against his manufacture and sale of them for use in those combinations, where it is his duty to see to it that they are not used, Thomson-Houston Electric Co. v. Ohio Brass Co., 80 Fed. 712, 721, 26 C. C. A. 107, 116, leaves no doubt that he is making and selling his hoisting devices and frames with the knowledge that they are being used, and the intention that they shall be used, unlawfully in the combinations of claims 1 and 3 of Henderson's patent, and that he is guilty of contributory infringement.

The application of Henderson for his patent was twice rejected by the examiner before the patent was issued, and counsel for Mr. Whitney have earnestly contended that by these rejections and Henderson's amendments of his claims he was estopped from insisting that any combination of the mechanical elements he describes, in which the

lower end of the frame of the hoisting device is not integral with the sides of the frame, constitutes an infringement of his claims, and that, because the lower end of Whitney's frame consists of a rod which is not integral with its sides, although its ends are fitted and headed into metal loops formed by bending up and fastening the lower ends of the side pieces of his frames, he escapes infringement. This argument has been attentively considered, but it has failed to convince. The specification of Henderson's patent, aside from the claims therein, is identical with that specification as it was first presented with his application. He first presented eight claims. They were all rejected by the examiner, who cited Murray, No. 854,959, May 28, 1907, and several other patents not now material, and wrote:

"None of the claims are seen to present invention over Murray. To arrange his U-shaped frame with the closed end down, so as to extend around the crossbar, would be obvious, if desired."

Henderson amended his claim 1 by inserting the words "the under side of" where they now appear in claim 1 of the patent, and added what is now claim 3 of the patent. The examiner again rejected all the claims, with the remark that the claims presented no invention over Murray, in view of Bowyer et al., No. 382,252, May 1, 1888. Henderson did not acquiesce in this rejection, but inserted the word "continuous," where it now appears in claim 1 of his patent, and again pressed his application. His solicitors argued, among other things, that:

"None of the structures of the prior art are adapted to support the scaffold without either positively securing the windlass frame to the scaffold or using a complicated structure for the windlass frame."

Their argument prevailed. The examiner held that the combinations Henderson claimed were not anticipated by Murray, or by Bowyer and Casperson, or by anything in the prior art, that they were novel and useful, and that they exhibited invention, and he caused the patent to issue.

[9] The rule of law which governs the question here at issue is this: While a patentee who acquiesces in the rejection of his claim, and abandons it on references cited in the Patent Office, and accepts a patent on an amended claim, is thereby estopped from maintaining that the latter claim covers the combination shown in the references, and that it has the breadth of the abandoned claim that was rejected, that is the limit of the estoppel. One who does not abandon, but insists upon and sustains, his first claim, is not estopped, and one who acquiesces in the rejection of his claim because it is said to be anticipated by other patents or references is not thereby estopped from claiming and securing by an amended claim every novel and useful improvement that is not described in those references. National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 714, 45 C. C. A. 544, 565; J. L. Owens Co. v. Twin City Separator Co., 168 Fed. 259, 268, 93 C. C. A. 561, 570; O'Brien-Worthen Co. v. Stempel, 209 Fed. 847, 851, 128 C. C. A. 53; Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 215 Fed. 362, 373, 131 C. C. A. 504.

Henderson is not estopped by the record which has been recited from claiming that combinations which embody the principle of those claim-

ed in 1 and 3 of his patent, that is to say, the location of the hoisting devices and their frames broadsides to the wall, and the support of the cross pieces without fastenings on the bar which connects the lower ends of the side pieces of the frames, because he never abandoned his claims of those combinations. Claims 1 and 3 are in the same words in which they were when they were first presented to the examiner, except that the words "the under side of" and "continuous" were subsequently inserted in claim 1. But the insertion of these words did not change the meaning or effect of the original claims. The subsequent presentation and allowance of these claims was an insistence upon, and not an abandonment of, them by Henderson, and their allowance by the examiner was the reversal of his earlier decision rejecting them. Even if it were conceded that the insertion of the word "continuous" indicated that Henderson's U-shaped frame was to be integral, nevertheless the claim of its integral character could have had no legal effect.

One may not escape anticipation or infringement by making an article in one piece, which then performs the same function in the same way that an earlier article of the same kind in two pieces performed, and the examiner could not have decided, and clearly did not decide, that the combinations of Henderson were patentable because the U-shaped frame was integral. He held that they were patentable, because they disclosed Henderson's new method of combining hoisting devices and the frames therefor broadsides to the wall with the cross pieces and floor pieces of the scaffold, so that the hoisting units should not obstruct the platform of the scaffold and the cross pieces should be supported on the rod which connected the lower ends of the vertical side pieces of the frames. This principle and the combinations which embody it were not disclosed or suggested in the prior art, nor in the references on which the examiner at first rejected Henderson's claim. His claims to the combinations of 1 and 3 of his patent Henderson never abandoned, never acquiesced in the rejection of, but pressed and reiterated until they were patented, and neither he nor his grantees are estopped from insisting upon their protection against infringement.

Let the decree below be reversed, and let a decree for an accounting and for an injunction against the manufacture and sale by the defendant, Whitney, or his agents, of his hoisting device and hoisting frame for use or sale in the combination of claim 1 or of claim 3 of Henderson's patent, or for any other purpose than use in a scaffold made by laying a plank or planks on the lower bars of two of his hoisting frames placed with their edges to the wall of the building, be granted.

SMITH, Circuit Judge (dissenting). Believing that the alleged patent of the appellant covers nothing but ordinary mechanical skill applied to the prior art, I think the patent is void, and this case should be affirmed. I therefore respectfully dissent from the foregoing opinion.