CHAIN BELT CO. et al. v. NEW YORK SCAFFOLDING CO.

(Circuit Court of Appeals, Seventh Circuit. August 10, 1917.)

No. 2408.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—SCAFFOLD.

The Henderson patent, No. 959,008, for scaffold-supporting means, claims 1 and 3, *held* valid, and infringed by the use of the scaffold hoist of the Whitney patent, No. 998,270, but not infringed by the device of the Whitney patent, No. 1,114,832, in which there is no hoisting drum, as in the Henderson device.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit in equity by the New York Scaffolding Company against the Chain Belt Company and Egbert Whitney. Decree for complainant, and defendants appeal. Reversed.

Appeal from decree awarding injunction and accounting for infringement by appellants of claims 1 and 3 of the United States patent to Henderson, No. 959,008, May 24, 1910, for scaffold-supporting means. The claims are as follows:

"1. A scaffold consisting in the combination of crossbeams, floor pieces extending between such beams, and a hoisting device associated with each end of each beam, each hoisting device consisting of a continuous U-shaped metal bar extending around the under side of and upward from the associated beam, and a hoisting drum rotatably supported by the side members of such bar."

"3. A scaffold consisting of a plurality of U-shaped bars arranged in pairs, a crossbeam laid in and extending between each pair of such U-shaped bars, a floor laid upon said crossbeam, a drum rotatably supported between the upwardly extending side members of each of said U-shaped bars, and means for controlling the rotation of said drum."

Figures 1 and 5 of the patent drawings are as follows:

FIG. 1. FIG. 5.

Fig. 1 shows a typical scaffold 5 in this art, suspended by ropes or cables 3, which hang from outriggers 2 attached to the building 1. The hoisting machines 4 are located on the platform and are manually operated to raise and lower the platform. Fig. 5 shows Henderson's hoisting machine, which, in association with the other enumerated elements, constitutes the combination of the claims in issue. The frame 6 extends downward, and is of

U-shape, adapted at 7 to receive, surround and support the ends of the cross-pieces or putlogs laid therein, which in turn support the platform boards 8, laid upon them. The upright sides 6 of the frame hold the revolving drum 10 to which the cable is fastened, and by means of a lever and handle 15 the drum is revolved by the operator and the scaffold platform thereby raised or lowered.

The defenses were noninfringement and invalidity of the patent through anticipation, prior use, and want of invention or patentability.

Robert H. Parkinson and Wallace R. Lane, both of Chicago, Ill., for appellants.

Paul Bakewell, of St. Louis, Mo., and C. P. Goepel, of New York City, for appellee.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). 1. The claims are for a combination, no element of which possesses novelty, and the combination itself shows but slight advance over the prior art. Patent No. 854,959 (1907) to Murray presents all the elements of the Henderson combination, except the U-shaped bar forming the bottom of the frame in which the crossbeams or putlogs are laid. In Murray's frames the side bars extend below the floor, and are bolted or riveted to the angle iron putlogs there shown. The frame has a revolvable drum extending between the sides of the frame, with handle and ratchet for operating the drum on which the cable is wound. In this construction the frame holding the drum is necessarily set at right angles to the building. Patent to Bowyer (1888) and to Sladek (1898) show painters' scaffolds having a frame U-shaped at the bottom, and supporting a hoisting drum between the upright sides of the frame; the lower U supporting directly the scaffold boards laid in them, without the intervention of putlogs. The evidence fairly establishes that in 1908, prior to Henderson's invention date, appellee, who owned the Murray and other patents for scaffolds, and had built up a large business in the supplying of scaffolds for the erection of high buildings, had furnished for the erection of the Blackstone Hotel at Chicago, scaffolds in which there was the U-shaped bar frame similar to that of Henderson, but with putlogs composed of two angle irons bolted together, the U-frame extending down between them, and the connecting bolts resting on the top of the under web of the U, the floor boards of the scaffold being, as in Henderson, laid parallel to the building. This employment of the U-bar did not change the position of Murray's machines, which, as shown in his patent drawings, was at right angles to the building. Henderson's contrivance having the ends of the putlogs laid directly in the U-frames at 7, necessitates the setting of the frames parallel or broadside with the building.

The evidence of prior art does not show a complete scaffold wherein, as in Henderson, the pairs of frames are so disposed that putlogs are laid directly into the bottoms of the frames without the intervention of bolts or equivalent contrivances. The special advantages claimed for the Henderson combination over others were testified to

be the saving of space in the width of the platform, greater security, and greater facility in the installation and removal of the scaffolding. All these, save the first, are quite dubious. There is in these drum machines necessarily considerable width of frame to accommodate the hoisting drum, which must be wide enough to hold 100 feet of cable. The frames and drums when set on the scaffold in pairs—two for each putlog—and at right angles to the building, might appreciably obstruct the width of the scaffold, and in so far as Henderson shows a combination wherein these drums might extend broadside of the building, he made advance to the extent that there was thereby effected substantial saving of room on the platform, although neither in the specifications nor the claims is mention made of the position of the drums with reference to the building wall.

We do not find in the prior art, or in the prior use, any operative scaffold of this general nature which seems to embody all of the elements present in Henderson's combination. His advance, however slight, is not so wholly wanting in invention or novelty as to justify a finding contrary to the presumptive validity of the grant to him, and we therefore conclude that his claims in issue here are valid. The validity of these same claims was recently in issue in a suit in Nebraska wherein appellee herein was plaintiff and appellant Whitney defendant. The District Court found for the defendant, but on appeal the Circuit Court of Appeals for the Eighth Circuit held the claims valid (New York Scaffolding Co. v. Whitney, 224 Fed. 452, 140 C. C. A. 138), although the District Court for the Western District of Pennsylvania, in a suit by appellee herein upon the same claims reached an opposite conclusion, holding the claims invalid as not disclosing invention (New York Scaffolding Co. v. Liebel-Binney Construction Co., 243 Fed. 577, —— C. C. A. ——, October term, 1914), the decree therein having been recently affirmed by the Court of Appeals for the Third Circuit.

2. The infringement alleged is in the manufacture and sale of two articles known as the Whitney scaffold hoist and the Little Wonder machine, made pursuant to patents to Whitney, numbered respectively 998,270 (1911) and 1,114,832 (1914). These patents are for devices for hoisting scaffolds, and the suit here was brought against appellant Chain Belt Company, on the claim that it manufactured the hoisting mechanism of these two patents, and knowingly sold or delivered them to users who would so apply and combine them with putlogs and scaffold floors as thereby to present all the elements of the combination of Henderson's claims 1 and 3, whereby in such manufacture and sale there was contributory infringement by the Chain Belt Company. Appellant Whitney intervened, alleging that all the machines made by the Chain Belt Company were made for him, that they had ceased making the Whitney scaffold hoist, that the Little Wonder did not infringe, and he asked that appellee be enjoined from prosecuting various suits it had instituted against users of the Little Wonder.

Upon the question of infringement we will consider first the Whitney scaffold hoist. This shows a hoisting drum revolubly mounted in a frame which has a straight rod or bar bolted to the lower ends

of the frame. When this frame is used by setting it on the scaffold broadside to the building, putlogs may be laid in and held by the bottom of the frame, as is contemplated by the Henderson patent, and, when in such position, the Henderson claims in issue are readable upon such structure, unless it may be said that the bottom of this Whitney frame, by being bolted to the sides, is not in effect the continuous U-shaped bar of Henderson. But in so far as the function of this bar is to support, by laying therein, the putlogs, it is not of essential materiality whether the continuousness of the frame is effected through one or several pieces of metal, or whether the corners are rounded or rectangular. Inasmuch as this bottom affords support extending around and holding the putlog laid therein, it does not seem important whether it is the precise bar described by Henderson, or its manifest equivalent, capable of performing this same function in the same manner as in the Whitney scaffold hoist, if otherwise all the elements of Henderson's combination appear. It was this same Whitney scaffold hoist whose manufacture and sale for the alleged purpose of its use in a like combination was the contributory infringement charged in the above-named Nebraska suit; and the Circuit Court of Appeals there further found that in such cases where the Whitney scaffold hoist having the drum was shown to have been made, and sold to be set broadside of the building, and used in pairs with putlogs laid therein after the manner of the combination of the Henderson claims, it contributed to the infringement thereof, and should be dealt with accordingly.

It was sought to show by the evidence that the Whitney scaffold hoist was intended to be used, and in most instances was used, by setting it with its hoisting drum at right angles to the building, and employing the double angle iron putlogs bolted together, with the bolts resting on the lower crosspiece of the frame, as has been referred to in connection with the Murray hoist on the Blackstone Hotel job. While there was evidence that these frames and drums had been so used, there was also evidence of their use broadside of the building with wooden putlogs laid therein, as in Henderson, and some evidence which would warrant the conclusion that in some cases it was intended or expected that they would be so used broadside of the building, with putlogs. In such cases, if intended by appellants for such use, the alleged contributory infringement appeared, and notwithstanding there is no evidence of any manufacture or sale of the Whitney scaffold hoist for a period of nearly two years next before the filing of the bill herein, relief was properly granted for whatever of contributory infringement there appeared through evidence of the intended manufacture and sale of the Whitney scaffold hoist with hoisting drum, where intended by appellants for use broadside the building, with putlogs laid therein, as in Henderson, and due restraint against future offending in this respect was likewise properly decreed.

3. The Little Wonder machine shows a pair of side bars or rods about six inches apart with cross rods bolted to top and bottom, forming a rectangular frame, between the uprights of which there is a complicated mechanism having series of oppositely arranged toothed

jaws operated by a lever. Below is a cut of "Plaintiff's Exhibit 20," which purports to be a photograph of a pair of the Little Wonders in actual use equipped with a putlog.

The cables shown are attached to outriggers, and may hang from the top to the bottom of the wall to be served by the scaffold. Moving the lever of the machine up and down, with a pump-handle motion, causes the mechanism alternately to release, clutch, and hold the cables, and thereby raising or lowering the machine, very much as a man would climb a rope, leaving the frame firmly held to the cable at any desired point. In this mechanism there is no drum whatever, or anything like a drum. The cables remain suspended their entire length as they are hung from the outriggers, and there is no winding, and no occasion for any drum. In the use of the Little Wonder there is thus omitted the element of the drum as included in the Henderson claims.

The charge of infringement is based on the identity of the frame of this machine with Henderson's U-bar frame, the equivalency in the combination with the Little Wonder mechanism to the specified drum machine, and the manufacture and sale of the Little Wonder for intended use in scaffolds after the manner of the Henderson claims. The ends of this putlog have holes to accommodate the cables which must pass through. The putlog appears too wide for the frame, and seems to be cut out to accommodate the side rods. Indeed, the evidence shows that in many, if not most, instances there are two more holes in each end of the putlogs for the side rods to pass through, and that they are placed in position by first unbolting and removing the lower cross rod, putting the side rods through the holes made for them, and replacing and bolting the lower rod. In this wise the putlog is held

absolutely, though not necessarily rigidly. While Henderson's claims do not, except inferentially, indicate that the putlogs should not be fastened to the frame, it appears from the file wrapper that after rejection of his claims the patent was finally granted partly on the representation by Henderson "that the connection between the U-shaped bar and the crossbeams is absolute and positive and no rivets, bolts or other auxiliary means are employed," from which it is inferable that his putlogs were held by the U-bar alone without fastening of any kind such as the rods and cable may be said to constitute in the use of Little Wonder. While this alone might not patentably distinguish the two combinations, it is well to be considered in connection with other differences.

It is contended that, while a drum is included as an element of the combination in each of the Henderson claims, yet this describes only the hoisting mechanism of the combination, and that any other hoisting mechanism would be its mechanical equivalent in the combination. Any substantial patentable advance shown in this patent bears a particular relation to the drum mechanism of the claims, not to be found in its relation towards the other mechanism under consideration. As has been pointed out, the drum construction is necessarily of considerable width to accommodate a drum wide enough to hold the cable to be wound thereon. The entire absence of the drum makes possible the comparatively extreme narrowness of the Little Wonder machine, rendering it practically immaterial in this respect, whether it is set at right angles or broadside to the building. If set at right angles, it would occupy scarcely more of the width of the platform than the Henderson machine set broadside.

The same question of infringement of these claims by this use of the Little Wonder was very recently before the federal court in Nebraska. The District Court, in litigation between appellee here and Whitney, involving the same alleged infringement held it to infringe, but on appeal to the Circuit Court of Appeals it was held, in an exhaustive opinion filed April 2, 1917 (243 Fed. 180, —— C. C. A. ——), there was no infringement of Henderson, in any use of the Little Wonder, whether set at right angles or broadside. It is our view that the Little Wonder is not the mechanical equivalent of the drum mechanism stated in the claims in issue as an element of that combination, and that through the entire absence of the drum a scaffold equipped with the Little Wonder does not respond to the Henderson claims, and thus does not infringe.

We conclude that the decree of the District Court is correct in finding the claims valid, and that there was contributory infringement of claims 1 and 3 by appellants, in making or selling the Whitney scaffold hoist, in those cases where made or sold with intent or knowledge on the part of appellants that they would be used in scaffolds in the manner of the Henderson patent as above pointed out, but that the decree is erroneous in finding infringement in the manufacture or sale or in any use of the Little Wonder machine.

The decree of the District Court is therefore reversed, with direction to enter a decree in accordance with the foregoing views; appellants and appellee each to pay half the costs of this appeal.