# SODEMANN HEAT & POWER CO. v. KAUFFMAN.*

(Circuit Court of Appeals, Eighth Circuit. August 9, 1926.)

No. 7022.

1. Patents ⟐26(1)—Where advance in art is gradual, each of several inventors accomplishing result is entitled to his own combination, so long as it differs from those of competitors.

Where advance in art is gradual, and several inventors form different combinations, accomplishing result with varying degree of success, each is entitled to his own combination, so long as it differs from those of his competitors, and does not include theirs.

2. Patents ⟐328.

Kauffman patent, No. 1,170,544, claims 1, 2, and 8, for radiator shield, held not anticipated and infringed.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by Samuel Kauffman against the Sodemann Heat & Power Company. Decree for plaintiff, and defendant appeals. Affirmed.

Arthur C. Eckert, of St. Louis, Mo., for appellant.

John H. Bruninga, of St. Louis, Mo., for appellee.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

WALTER H. SANBORN, Circuit Judge. This is an appeal from a decree of the court below to the effect that the Sodemann Heat & Power Company has infringed claims 1, 2 and 8 of patent No. 1,170,544, issued to the complainant, Samuel Kauffman, February 8, 1916, on an application filed May 3, 1915, for a radiator shield, and for the usual injunction against continuance of the infringement, for profits, damages, and costs. The character of the invention for which this patent was issued is well disclosed by Mr. Kauffman's claim 8, which is:

"8. An improved radiator shield, comprising two vertical imperforate brackets adapted to be placed at the ends of the radiator in position to deflect the heated air, a vertical shield portion attached to said brackets at the rear of the radiator and arranged to co-operate with said brackets to deflect the heated air vertically, a horizontal shield portion extending horizontally above the radiator, a curved shield portion integrally connecting said vertical and horizontal portions, a trough integral with said horizontal portion between said brackets, a passage into said trough below

*Rehearing denied October 18, 1926.

said horizontal portion, and means for preventing the air from carrying the deposits out of said trough."

This suit has a judicial history, which limits the extent of the present controversy in this court. It was tried by the court below, and all but one or two of the patents that are now alleged to anticipate Kauffman's invention were introduced in evidence and considered by that court in 1920. It then was of the opinion that Kauffman's combination of old mechanical elements did not rise to the dignity of a patentable invention, but was a mere aggregation. Having in view the state of the art, which it reviewed in its opinion, the District Court then said:

"But undoubtedly complainant has selected from the old art all of the seemingly valuable elements thereof, and has made a new combination of them, which combination has produced a shield which differs from its predecessors in the art. If there is invention, such invention consists in the combination of these old elements into a new device, which as the proof shows is valuable and popular."

And it denied Mr. Kauffman a decree of infringement because it was of the opinion that there was "no patentable novelty in the complainant's device." Kauffman v. Sodemann Heat & Power Co. (D. C.) 267 F. 435, 438, 439.

An appeal was taken from the decree to that effect, and this court reversed it, and held and decreed that Kauffman's device was not a mere aggregation of old elements, but was a new and useful combination, which disclosed invention, and was patentable and valid, unless anticipated by prior patents, use, or other legal anticipations. It said:

"While the evidence justifies a finding that patentee's device is a combination of old elements, it also justifies a finding that a new result is produced by his device, which is more efficient than any heretofore known, to deflect, by the use of the shield in his device, the dust particles arising with the heat from the radiator, into a trough, which is also a part of his device, where they will be retained, and protect the walls and ceilings from the black dust and smoke arising from the radiator."

After reviewing the combination this court further said:

"Such a combination makes it a useful device for protecting the walls and ceiling from being discolored, and in the absence of older patents, prior use, or other legal anticipations, would be patentable. The patented device, taken as a whole, shows something more than mere mechanical skill."

This court further said:

"Disregarding the prior patents introduced by the defendants, there has been no substantial evidence warranting a finding that plaintiff's patent had been anticipated or was invalidated by reason of the prior art. The presumption arising from the granting of the patent is that it is a patentable novelty, which can only be overcome by clear proof to the contrary." Sodemann Heat & Power Co. v. Kauffman (C. C. A.) 275 F. 593, 594, 596. Pursuant to these views, this court reversed the decree of the District Court, but the former patents, which were claimed to have anticipated the plaintiff's devices, and which had been received in evidence and considered by the District Court, had not been given notice of by the defendants as required by section 4920 of the Revised Statutes (Comp. St. § 9466), and for that reason this court directed that the defendants be given leave to give notice thereof under that section, and to amend their answer, and plead and put these patents and any prior use in evidence. The defendants accordingly amended their answer, gave the requisite notices, introduced in evidence the patents by which they claimed anticipation, and Judge Faris, who conducted the first trial, in view of the opinion and decision of this court, which had become the law of the case, again tried this case and then rendered his decree for the patentee, Kauffman. It is this decree which the present appeal challenges.

There was no evidence in the second trial, except the evidence at the first trial, including the patents and uses erroneously admitted and considered at that trial, and the testimony of Mr. Sodemann that the Hawkins shield was one of the earliest in the field, over 20 years ago, and the admission of a specimen of it.

So it is that the decree in favor of the patentee in this case now comes to this court buttressed by the law of the case to the effect that (1) the presumption arising from the granting of the patent is that Mr. Kauffman's combination of old elements is a patentable novelty which can only be overcome by clear proof to the contrary; (2) that, unless the contrary is clearly proved by the patents and uses erroneously received in evidence and considered at the first trial, and rightly received in evidence and considered at the second trial, the combination of Mr. Kauffman disclosed invention, "something more than mere mechanical skill," and that "a new result is produced" by it, "which is more efficient than any heretofore known, to deflect, by the use of the shield in his device, the dust particles arising with the heat from the radiator into a trough,

which is also a part of his device," and the result is that the only question for this court at this time is whether the patents and uses introduced by the defendant make such clear proof.

[1, 2] Counsel for the defendant have presented to prove anticipation of Mr. Kauffman's patented combination 13 patents and the use of a radiator shield in the post office building at St. Louis. These patents evidence improvements, or attempted improvements, upon crude and less efficient devices to draw the rising warm air and the dust it bears into a trough on the forward end of the shield over a radiator, and prevent that dust from blackening the walls and ceiling of the room. They are found in a crowded art, where the advance toward the simple and efficient, popular, and successful combination of Kauffman was gradual, where many inventors made different combinations, which tended to accomplish, or accomplished with varying degrees of success, the desired result, and these attempts and successes in this case must be considered and adjudicated by the rule: "Where the advance towards the desideratum is gradual, and several inventors form different combinations which accomplish the desired result with varying degrees of operative success, each is entitled to his own combination, so long as it differs from those of his competitors and does not include theirs." National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 F. 693, 695, 706, 712, 45 C. C. A. 544, 563, and cases there cited. See, also, New York Scaffolding Co. v. Whitney, 224 F. 458, 140 C. C. A. 138.

The reference which counsel for the defendant discusses in his brief and discussed in his argument most exhaustively, and upon which as an anticipation he seems to place the most reliance, is the combination patented to Rollyn Hawkins by patent No. 818,026, dated April 17, 1906, on an application filed February 7, 1905, for a "dust deflector and catcher for radiators."

The patented combination of old elements of Kauffman produces a dust shield in the form of a fireplace, consisting of a metal back and sides which inclose the back and a large part of the two ends of the radiator on which it is supported. The back of this shield extends forward horizontally over the top of the radiator, and its forward edge is so deflected that it holds a dust trough, into which the dust is drawn and where it is held securely by the trough. A lithic top in the form of a horizontal slab secured above the horizontal top of the shield completes the latter and Kauffman's combination. This shield is sup-

ported on the radiator, so that its lower end is a few inches above the floor of the room, so that the draft caused by the air heated by the radiator ascending within the shield, as in a fireplace, draws the cold air and the dust therein upon the floor from behind, from both sides, and from before the shield up into the trough, and there holds it. Kauffman's dust shield is simple, easily constructed, may be placed without aids or accessories, and used near to or far from the walls of a room, and it covers the top, the back, and a large part of the ends of a radiator, and extends to within a few inches of the floor on which the radiator stands.

The combination of Hawkins consists of a cap with closed ends, which covers the top of the radiator, but does not extend below the top of the radiator. It contains a dust trough on its front edge, and its back edge is "bent down to form the approximately vertical member 26, and the edge of that member is bent to the rear to form the member 27 to make a close fit against the wall when the radiator stands quite close thereto; but when the radiator is located remote from the wall, as shown in Fig. 2, an apron 29, which is adjustable in its position, as shown in dotted lines in Fig. 2, is required to direct the current of air arising between the radiator and wall into the dust-catcher. This apron is formed out of sheet metal, with a top roll or bead to receive lugs 30 from the plates 18 of the hood, thereby forming a hinge connection which makes the apron adjustable."

The figures of the specification of the Hawkins patent demonstrate the fact that neither the bent rear of the hood nor the lower end of the apron extend more than one-fourth of the distance from the top of the radiator to its bottom. In order to get the air and dust back of the radiator up within range of his cap and adjustable apron, Hawkins described in his specifications and claimed a false wall between the real wall of the room back of the radiator and the latter, for use where a molding, window casings, pipes, or other obstructions occur. This false wall comprised a vertical sheet metal plate, perforated near its lower end, which rested upon the floor, and the upper end of which extended up into the range of adjustment of the apron, and a corrugated sheet of metal placed between this vertical plate and the radiator, separated therefrom by horizontal metal bars and riveted to the vertical plate. This cumbersome, complicated, and expensive combination of top cap, the rear of which was bent down "to make a close fit against the wall" of the room, securing an adjustable apron to

prevent the air back of the radiator from escaping when the radiator was a little farther from that wall, and a vertical, perforated plate standing on the floor back of the radiator, to which the corrugated metal sheet was riveted, strongly indicate that the theory and principle which inspired Hawkins to make this combination was to box up the air back of the radiator, so that it could not rise, and in that way to force it through the perforations of the vertical sheet near its foot on the floor within the range of his cap and swinging apron.

However that may be, his mechanical device to get the air and dust into his cap is too complicated, too cumbersome and expensive, to compete with the simple and, in our opinion, much more effectual combination disclosed by Kauffman, consisting of his simple shield, with its back and sides supported on the radiator, so that there will be a space of a few inches only between it and the floor, which utilizes the draft that the ascent of the heated air between the radiator and the shield will unavoidably create to withdraw the cold air on the floor from the rear, the sides, and the front of the radiator up into his dust trough. The warmest current of air and the strongest draft in the use of Kauffman's combination unavoidably is that ascending between the back of the shield and the radiator, and it necessarily will more effectively draw the cold air and the dust from the floor in the rear of the radiator than the cumbersome rear box of Hawkins.

The specifications of the two patents disclose a still greater difference in favor of Kauffman between the complicated and extensive device of Hawkins to support his cap and accessories on the radiator and the simple and inexpensive device of Kauffman for the same purpose. Moreover, the side pieces or side brackets of Kauffman's shield constitute a substantial and useful element of his combination. They serve to increase the draft that carries the dust up into the dust trough and leave the space between them and the floor open, so that the air and the dust from every side may be drawn in through this open space and carried up into the trough. Neither these side pieces nor any mechanical equivalent of them is found in Hawkins' patent. The same remark applies to Kauffman's lithic top. Because these elements of Kauffman's combination are absent from the combination of Hawkins, because the former's combination is so much more simple, inexpensive, and efficient than that of Hawkins that, in our opinion, something more than the skill of a mechanic was required to make the

advance in the art it discloses, neither Hawkins' patent nor his combination constitutes an anticipation of the invention of Kauffman.

The other patents and the use of the dust shield in the post office building at St. Louis have received study and meditation, but none of them seems to us to present a defense to this suit, and no good purpose would be served by inserting in this opinion a review of them, and it is omitted. The patent to Robert B. Miller for a wall protector, No. 334,-794, issued January 26, 1886, to which counsel for the defendant invoke our special consideration, has received such consideration, but it lacks the support of the shield upon the radiator; it leaves it standing on the floor and excludes the draft of the air and the dust from its rear and its sides beneath the shield and up into the trough, an essential and evidently useful characteristic of Kauffman's combination.

Nor are we satisfied that there was any error in the finding of the court below that the defendant had infringed upon the patent of the plaintiff. Our conclusion is that the plaintiff, Kauffman, invented a new combination of old mechanical elements whereby a new result was obtained in a more useful, easy, economical, and efficacious way than it had ever been obtained before, and that the decree in his favor ought to be affirmed. See Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Thomson v. Bank, 53 F. 250, 252, 3 C. C. A. 518; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 F. 693, 707, 45 C. C. A. 544.

It is so ordered.