## BABCOCK & WILCOX CO., Inc., v. PUGET SOUND MACHINERY DEPOT.

### No. 614.

District Court, W. D. Washington, N. D. June 6, 1930.

Roberts, Skeel & Holman, of Seattle, Wash., and Geo. F. Scull, of New York City, for complainant.

H. B. Jones, of Bronson, Jones & Bronson, of Seattle, Wash., and John E. Hubbell, of New York City, for defendant.

NETERER, District Judge.

The parties are competitors in making and selling boilers of the Stirling type:

The basic patents on such boilers have expired, and plaintiff claims combination under Bell and Jacobus patents, and contends that the pressure part of one boiler was built and constructed by the defendant,

which includes improvements forming some of the claims of the plaintiff's Bell patent and Jacobus' patents. The construction and erection was without actual knowledge of the patents asserted by plaintiff, and after notice, defendant modified its practices. Defendant also eliminated the baffle supported by water circulators connecting rear and middle upper boiler drums, covering the extent of plaintiff's charge of infringement under each Jacobus patent.

It is admitted that the Bell patent has not been infringed since notice to the defendant. The charge of contributory infringement after notice is not supported by proof of intent or collusive conduct on the part of the defendant.

The plaintiff's claims of infringement in issue may be concisely stated: (1) Feed water inlet, and main steam offtake from rear drum, (4) front water circulators in combination, and (7) protective means including baffle supported by water circulators connecting rear and middle upper drum, with a special function of preventing the flow of gases into the space between the drums (patent No. 1,252,444),

and water circulators connecting the rear and middle upper drum (patent No. 1,272,667);

while patent No. 1,272,667 is for the same general combination as that specified in the claim in issue in No. 1,252,444, being more specific in its elements and calls for the same arrangement of drums, steam offtake and baffle having the special function of stopping the passage of gasses into the space between the drums, but adds water circulators between the rear and middle drums.

Concisely, what Jacobus did was to raise the rear drum of the Standard Stirling boiler to the level of the middle drum of the Standard Stirling boiler, transfer the steam outlet from the middle to the raised rear drum, and provide protection for the rear drum against possibly destructive conditions which the first changes made possible, and added water circulators between rear and middle drums. Jacobus, it is urged, was the first to bring together in relation and relative location parts or elements of the Stirling boiler, with the added water circulators between the rear and middle drums, giving old results (dry steam) in a cheaper and more effective way.

Dry steam holds no unevaporated water, and in a more effective and cheaper way, is sought. It is obvious that the water level in the rear drum tends to fall as the generation of steam is increased, and that variation in water level is due to water and steam mixture in different portions of the boiler; and the greater the increase of steam bubbles distributed in the mass of water, the lower is the density of the steam and water admixture.

British patent, Cowan, 9,924,

shows a Stirling boiler with all the drums on the same level, with water feed on rear drum which contains a partition which holds the water level in relation to the steam outlet on the middle drum as the rear low drum of the Stirling boiler; and while the presence or absence of the baffle does not affect the qual-ity of the steam, it does provide protection for the rear drum. There is a compensating relation between the water levels in the upper drums as the boiler is forced to higher ratings in the Jacobus' patents, which does not obtain, or at most in a much lesser degree, in the Cowan patent, or any of the patents relied upon by the defendant. The simple idea of Jacobus was not thought of by Cowan, since for successful operation he added a complicated and expensive system of steam circulators to produce dry steam. Lines 13–15, Cowan patent 9,924, when the boiler is forced, there is a tendency for the water to pile in the two steam-water drums (a) and (b) nearest the furnace and to lower the level in the feed drum (c), do not elucidate the claim here asserted by defendant, when considered with the longitudinal division of the upper rear drum into halves, and the use of the special device for efficient results.

The conclusion as to the Cowan patent applies to all patents asserted by defendant, and it could serve no useful purpose to discuss the various patents and thus unduly extend this memorandum. The evidence shows that while the idea is simple, it did elude all prior inventive genius. Jacobus caused the quantity of steam produced to have two changes as it flowed from the front upper drum to the steam outlet, passing through two sets of circulators instead of one, and this doubled the number of changes in steam direction passing through drums, increased the amount of mechanical separation of water from the steam before it reached the steam nozzle, and prevented, or lessened, what the experts define as "priming"; that is, carrying water from the drum into the steam outlet. He was the first to benefit by the lowering of the water in the rear drum by forced heating by placing the steam outlet on the rear drum, dehydrating the steam by increased number of changes of direction through the drums minimized the priming action, resulting in dryer steam at the same rating, and protected the rear drums from heat gases flowing upward, preventing impingement with detrimental effect, in the event of lack of water in the rear drum.

It is more than a question of simple mechanics. The idea must be present and proven by experimentation to find the relation and effect of combination of old elements to produce old results in an efficient and better way, and that is what Jacobus did, and provided water circulators between the rear and middle drums, and thus comes within the pro-

vision of the statute. New York Scaffolding Co. v. Whitney (C. C. A.) 224 F. 452; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527.

Decree accordingly.