PELTON WATER WHEEL CO. v. DOBLE.

(Circuit Court of Appeals, Ninth Circuit. October 9, 1911.)

No. 1,970.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—HYDRAULIC NOZZLE.
    The Doble reissue patent, No. 12,460, for an improvement in nozzles for impact water wheels, was not anticipated, covers a true combination, and discloses patentable invention; also *held* infringed.

2. PATENTS (§ 26*)—PATENTABLE COMBINATIONS—ESSENTIALS.
    It is not necessary to constitute a patentable combination that each element in performing its own function shall also modify the function performed by the others, but it is generally sufficient if there be such coaction that a result is produced which is new, and the result is new if it is substantially a better result than that which has been accomplished by other combinations.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*

    Patentability of combinations of old elements as dependent on results attained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

3. PATENTS (§ 26*)—PATENTABLE COMBINATIONS.
    That there is novelty in one of the elements does not justify a claim to a patentable combination of the elements, unless there is coaction be-

tween them to produce a new result, but a combination is not unpatentable merely because the result might have been accomplished by other combinations.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

Appeal from the Circuit Court of the United States for the Northern District of California.

Suit in equity by May E. Doble against the Pelton Water Wheel Company. Decree for complainant (186 Fed. 526), and defendant appeals. Affirmed.

N. A. Acker, Wm. F. Booth, and Frederick S. Lyon, for appellant. John H. Miller and William K. White, for appellee.

Before GILBERT and MORROW, Circuit Judges, and HANFORD, District Judge.

GILBERT, Circuit Judge. [1] This appeal brings under review the interlocutory decree of the Circuit Court granting a perpetual injunction against the further infringement of the eight claims of reissue letters patent No. 12,460, granted on February 27, 1906, to William A. Doble for an improvement in "nozzles for impact water wheels." The suit was brought by the appellee as owner of the patent against the appellant as the infringer thereof. Infringement is not denied. The defenses of the appellant in the court below and here are want of invention, anticipation, and that the patent covers a mere aggregation of elements, and not a true combination. The purpose of the invention is to make more sensitive and place under instant control the water jet directed under high pressure upon the buckets of a tangential water wheel. The evidence shows that in operating that class of water wheels, especially those used in driving electric generators, the load upon the wheel varies from time to time due to an increased or lessened use of the electric current through the system supplied by the power plant, the result being that, if the load on the wheel is suddenly reduced and the jet of water is not simultaneously reduced in volume or partly deflected off the buckets of the wheel, the wheel will rotate at too great a rapidity, or, if the load upon the wheel is suddenly increased and the jet of water is not at the same time increased or turned more directly upon the buckets, the wheel will slow down. There are other causes of variation, and it becomes essential that the speed of the generator shall remain as near constant as possible. Economy in the use of water also enters into the problem. There can be no doubt of the value of the appellee's invention. Its value is conceded in the evidence. It has gone into general use, and it has superseded all prior combinations. The evidence is convincing that it does, in practice, instantly deflect the jet either from or to the buckets, according to the variation of the load, and that it embodies means for varying the volume of the jet so as to secure economy in the use of the water. Figure 1 is a plan view, and figure 2 is a side

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

view, of the nozzle, which is the distinguishing feature of the Doble invention.

In both these views 1 is the water supply pipe, and 2 the curved nozzle provided with the needle valve, 3. The nozzle is pivoted to the supply pipe in the plane of the nozzle's sinuosity. It is curved so as to permit the insertion of the stem 14 of the needle valve 3. The needle valve stem in extended through the nozzle casing in order to permit the use of external means for moving the needle valve back and forth. In order to permit the insertion of the needle valve, it is apparent that the nozzle must be curved, but in the use of a curved nozzle there necessarily results a reactive force from the outer curve, tending strongly, and proportionately to the pressure of the jet, to turn the nozzle in the opposite direction. Said the patentee in his specifications:

"The nozzle illustrated is drawn from an example intended for a pressure of eight hundred pounds per inch of area, and a jet two inches in diameter would produce a reactive force of more than two thousand five hundred pounds, which would produce a turning strain if there was a vertical axis at right angles to the axis in figure 1. * * * I overcome this by placing the pivot pin at right angles to the line of discharge from the supply pipe, and in the plane in which the nozzle is bent."

This last sentence discloses the distinctive feature of the appellee's patent. Curved nozzles with needle valves had been used before, but they had always been hinged to the supply pipe at right angles to the plane of the nozzle's curvature. Sometimes the curvature was downward and sometimes upward, but in either case the jet struck the curve creating a strong reactive force which tended to turn the nozzle upward or downward on the axis in accordance with the direction of the curve. Various devices were resorted to to overcome this. In some cases heavy counterbalancing weights were used, but, as the force of the jet was variable, there was nearly always a considerable resistance or inertia to be overcome by the governor, resulting in

slowness of deflection of the nozzle from or to the buckets of the wheel, and want of sensitiveness and responsiveness of the jet to changes of pressure on the generator. To overcome this, Doble conceived the idea of turning the nozzle so as to place the axis in the plane of the nozzle's sinuosity.

It is urged that the addition of this feature to the combination does not show invention; that it was to do the obvious thing, that which any mechanic would have done when called upon to remedy the known defects of prior devices. To this it is to be said, among other things, that although the defects of the nozzles which had been in use for many years prior to Doble's invention were well known and recognized, and mechanics and engineers had been called upon to remedy them, no one prior to Doble thought of the simple expedient of changing the axis of the pipe from the horizontal to the perpendicular. That one step in the art marked success in the combination. It was obvious that the reactive force in a curved nozzle could be counterbalanced by counterweights, and that, if the force were constantly uniform, it would be possible to adjust the weights so nicely as to counterbalance the same perfectly, and render the nozzle sensitive to the deflecting force of the governor. But the use of the needle valve made such counterbalancing impracticable, for the reason that the needle valve was intended to control and reduce the stream when occasion demanded, and with the reduction of the stream there was a corresponding reduction of the reactive force, and consequently a heavy weight to be overcome by the governor. The use of the needle valve in the combination, therefore, created the problem which confronted the engineers and those skilled in the art, and which, for several years, they endeavored to solve. The problem was submitted to two engineers of the Risdon Iron & Locomotive Works, to George J. Henry, the engineer of the appellant, and to the engineer of the appellee. The result of their efforts was the construction of two or three devices. One was a straight nozzle inside of which was a flexible needle valve. Another was a nozzle with a stationary needle valve, relative to which the nozzle itself was made movable by means of a sliding tip. Mr. Henry in his testimony admitted that at that time the solution of the problem was not obvious. In the year 1902 Doble, the inventor of the Doble patent, constructed and installed for the Santa Ana Water Company two nozzles, pivoted in the plane of the nozzle's curvature. These were the first that were designed and used under his invention. Henry, the engineer of the appellant, saw this nozzle in use, and conceived the idea of an improvement upon it by adding a reactory support mounted upon its own pivot in the plane of the pivot of the nozzle itself. For this improvement he applied for a patent on June 3, 1903. Doble filed his application on October 17, 1903, and his patent was issued on February 9, 1904. A week later he filed an application for a reissue. On May 6, 1905, Henry, upon the suggestion of the Patent Office that he insert in his application claims sufficiently broad to cover the invention disclosed in his drawings, amended his claims so as to cover the Doble invention as his own. Interference was declared, and the result was that Doble was ad-

judged to be the original and first inventor of the nozzle covered by the patent here in suit. The cost of prosecuting Henry's application for a patent and the costs of the interference proceedings were paid by the appellant, pursuant to a general agreement which they had with Henry, their chief engineer.

While these facts are not sufficient to estop the appellant to deny that the appellee's combination involves invention, they may properly be considered as tending to show that at that time the appellee and its engineer deemed the improvement patentable. While it seems a very simple matter to overcome the reactive force of the jet with reference to the governor by changing the plane of the nozzle, the question of the invention involved in a combination of which that is an element should be regarded as it appeared to those who were skilled in the art who were called upon to deal with the problem, rather than in the light of its subsequent solution. All nozzles with needle valves theretofore used had been made in a curved form, and had been hinged at right angles to the curvature, with the needle valves so inserted as to be operated from a point outside the nozzle. The defects of that construction were well known. The problem of their correction was submitted, not to mere mechanics, but to the most skillful engineers in the art. After a period of some three years of experiment and investigation, Doble solved the problem, and his combination went into immediate and general use. In view of all these facts and the presumption arising from the issuance of the patent, we think the court below did not err in finding invention in the appellee's combination.

It is earnestly contended that there is to be found in the prior art a full and complete anticipation of each of the claims of the patent sued on. The nozzle principally relied upon as showing anticipation of the Doble nozzle is that which is designated in the record "Exhibit 11." It was installed by the appellant in 1896 at the Mill Creek plant No. 1 of the Redlands Electric Light & Power Company. It is a symmetrical nozzle, having two curved branches for the purpose of dividing the stream which issues from the supply pipe, and distributing it in the form of two jets upon the respective buckets of two wheels mounted upon a single shaft. The pivot of the nozzle is in the plane of the curves of the two branches thereof. To understand the value of this device as showing anticipation, it is important to consider its history and the circumstances under which it was installed. Prior to 1896 the head of water at the place where it was installed was 366 feet. There were in use two independent water wheels on a single shaft. Each wheel was driven by two jets issuing from a deflecting nozzle provided with two tips. Each nozzle was pivoted to the pipe line by a ball joint. In 1896 the head of the water was increased to 530 feet. Two jets were no longer required to operate each of the wheels, consequently the nozzles were changed for the purpose of adaptation to the increased head of water. The discharge pipe was placed midway between the wheels, and a single nozzle with branches curved laterally was pivoted thereon. There was no needle valve in either of the nozzles, as the head of water was uniform, and there was no occasion to exercise economy in the use of the water. As to the

reason why this particular form of nozzle was used, there is some conflict in the testimony. The witness Hagmaier, who was the engineer who installed the nozzle for the appellant, testified that the end in view in installing the nozzle was to overcome the reactive force of the jets issuing from the tips. This testimony is not in harmony with the proven facts, and we agree with the court below that it should not be credited. The evidence plainly indicates that the change in the nozzle was made for the reason above indicated, that, the pressure of water having been greatly increased, one jet was sufficient, and two jets were no longer needed to run each wheel. There was but one problem before the engineer, and that was the most practical method to distribute a stream issuing from a single pipe upon two water wheels mounted upon the same shaft. He adopted the simplest method of doing this. He used a nozzle with two branches. Necessarily the branches had to be curved and curved outwardly. Necessarily, also, the nozzle was pivoted in the plane of the curvature of its branches.

But it is said that by the use of that nozzle the reactive force of the water jets was counterbalanced. This is true. The reactive force in each jet counterbalanced the force in the other, so that no reactive force was perceptible. But it does not follow that Hagmaier was the inventor of an improvement which anticipates that element of the appellee's patent, or that he conceived the basic idea which was subsequently embodied therein. The question of counterbalancing a reactive force in a nozzle was not presented to him. It did not exist in the nozzles which were replaced by the installation of Exhibit 11, for the pressure had been constant, there had been no means of varying the volume of the jets, and the reactive force had been counterbalanced by fixed weights. The construction and use of Exhibit No. 11 would not in itself have the effect to suggest either the existence of reactive forces or their remedy. Such forces were not obvious, for they were in equilibrium. That nozzle never went into general use. None has been made in the last ten years, and only four were ever made.

Nor is the appellee's combination anticipated by the drawing shown in defendant's Exhibit No. 2, a drawing unaccompanied by text or description, and found in Bulletin No. 9, California State Mining Bureau. It shows a straight nozzle with a chamber for the mounting of the bearings of a needle valve stem. The nozzle is attached to a curved elbow whereby it is connected to the supply pipe which is curved upward so as to meet the elbow. The nature of the joint between the supply pipe and the elbow is not clearly indicated in the drawing. It appears to be a rotatable joint. If it is such a joint, it permits the lateral deflection of the nozzle from the water wheel, but it does not present a nozzle pivoted in the plane of its curvature. Nor is it pivoted in any other plane, unless it is said that it is pivoted in the plane in which it rotates, and in that case the plane is at right angles to the curvature of the nozzle. There is nothing in the drawing to suggest the solution of the problem of overcoming reactive force in the nozzle, and there is no proof in the evidence that any

nozzle was ever used or even constructed, or could have been made to operate in accordance with the drawing.

Several patents were exhibited for the purpose of showing the prior art, but they are so plainly variant from the appellee's combination as to require no discussion. The patent to S. Adams of February 7, 1871, shows a straight nozzle secured to a rubber hose which is connected to a curved pipe, which, in turn, is connected by a rotatable joint to the supply pipe. The patent to Hendy and Loveridge of November 27, 1888, shows a straight nozzle attached to an elbow, and the elbow attached to the pipe by rotatable joint. The Richardson patent of March 17, 1896, has a straight nozzle pivotally supported and connected with a supply pipe. The Bookwalter patent of December 17, 1895, shows a curved nozzle connected to the pipe by a rotatable joint. The friction at the point of juncture is regulated by a perpendicular bolt, fastened through the nozzle and pipe and through a coiled spring above the pipe. There is no needle valve, and the plane of deflection of the pipe is at right angles to the curvature of the nozzle. The Crawford patent shows a straight nozzle connected to the pipe by a ball and socket joint, with no valve or other means of regulating the jet.

[2] It is contended that the claims of the Doble patent cover a mere aggregation of elements, and not a true combination. An aggregation is the mere assembling of separate elements without changing their respective separate functions or accomplishing any result other than the added results of those functions. In order to be patentable, a combination of elements must in their co-relation produce a different force, or effect, or result, from the sum of that which is produced by their separate parts. Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719. It is not necessary that each element in performing its own function shall also modify the function performed by the others. Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241. It is generally sufficient if there be such coaction that a result is produced which is new, and the result is new if it is substantially a better result than that which has been accomplished by other combinations. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

[3] The fact that there is novelty in one of the elements, as in the present case in the change of the plane of the nozzle pivot, does not justify a claim to a combination of the elements, unless there is coaction between them to produce a new result, and a combination is not unpatentable merely because the result might have been accomplished by other combinations. The claims of the patent in suit cover a hydraulic apparatus consisting of an impact wheel with buckets, a nozzle pipe of double curved form for directing a stream of water upon the buckets, means for varying the amount of water discharged from the nozzle, and a supply pipe to which the nozzle is pivoted on an axis in the plane of its sinuosity, and substantially parallel to the axis of the wheel. We think there can be no question that the elements so described co-operate to produce a single result, which is the perfect regulation of the jet, together with the greatest practical economy of water. The means for varying the amount of water discharged

from the nozzle is the needle valve, and this not only controls the volume of the jet, but through the action of the governor it also controls the direction of the jet. The nozzle pivoted to the pipe line in a plane at right angles to the plane of its curvature renders the nozzle sensitive to the deflecting power of the governor. The result is a successfully working combination, one that marks a distinct improvement upon any prior combination. This result would not be produced by the elements in their separated state, or as assembled in a mere aggregation without co-operation and functional relations to each other. In the oral argument counsel for the appellant laid stress upon the fact that the needle valve does not act automatically, and contended that the necessity for manual operation thereof to increase or decrease the flow of water through the nozzle indicates lack of coaction of all the elements of the patented combination. It is the opinion of the court, however, that this is not a reliable test of a patentable combination applicable to this case, since the needle valve does by its action, in the combination, contribute to the production of the desired result.

We find no error in the decree of the court below. It is accordingly affirmed.