GALVIN ELECTRIC MFG. CO. v. EMERSON ELECTRIC MFG. CO.

Circuit Court of Appeals, Eighth Circuit.
May 17, 1927.

No. 7608.

1. Patents ⬿112(3)—Issuance of patent for combination raises presumption claims are valid combinations.

Issuance of a patent for combination raises presumption that claims of patent are valid combinations.

2. Patents ⬿26(1)—Introduction of new element into recognized combination, producing new and useful result, or old result in new, more efficient, way, constitutes "invention."

If the introduction of a new element in a recognized combination produces, through the coaction of all the elements, an entirely new and useful result, or an old result in a new, more facile, economical, and efficient way, it constitutes "invention."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

3. Patents ⬿53—"Anticipation" is not made out by fact that prior existing device in different art may, by redesigning, be applied to patent in suit.

"Anticipation" is not made out by fact that prior existing device in a different art may be used in patent in suit, where it would take more than the skill of an ordinary mechanic to modify such device for use in device of patent in suit, and the fact that it could be so used was not previously discovered.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

4. Patents ⬿26(2)—Combination of old elements is patentable, if it produces a new and useful result, or an old result in a new and better way.

Combination of old elements is patentable, if it produces a new and useful result, or effects an old result in a new and materially better way.

5. Patents ⬿328—1,256,121, claims 1–4, for improvements in oscillating mechanism of electric fans, held valid and infringed.

Patent No. 1,256,121, claims 1–4, for improvements in the oscillating mechanism of electric fans commonly used in homes and offices, held valid, unanticipated, and infringed.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Patent infringement suit by the Emerson Electric Manufacturing Company against the Galvin Electric Manufacturing Company. Decree for plaintiff, and defendant appeals. Affirmed.

John H. Bruninga, of St. Louis, Mo., for appellant.

Lawrence C. Kingsland, of St. Louis, Mo. (John D. Rippey, of St. Louis, Mo., on the brief), for appellee.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This is an appeal from a decree in a suit for infringement of a mechanical patent, brought by the Emerson Electric Manufacturing Company (hereinafter called plaintiff) against the Galvin Electric Manufacturing Company (hereinafter called defendant), in which the patent was sustained and infringement found.

The patent involved is No. 1,256,121. The application was filed by Herbert I. Finch and Thomas M. Meston, on September 10, 1917. The patent issued February 12, 1918, to the plaintiff as assignee. It is for certain improvements in the oscillating mechanism of electric fans of the general type commonly used in homes and offices. The purposes of the device are set forth in the specification as follows:

"It is the purpose of our invention not only to provide an arrangement whereby the selective variation of adjustment is rendered practically infinite, so that any adjustment of the fan's oscillatory stroke between maximum and zero may be made, but also to pro-

vide a device of greatly simplified construction, one in which the necessary adjustments may be made very easily, both while the fan is operating or stationary, one in which the selected adjustment, though easily accomplished when desired, may not be changed by the ordinary operation of the device, thus insuring its permanency, and to provide a device in which the various operating parts are entirely housed and protected and entirely free from casual disorders."

The following claims are involved:

"1. In a fan, an oscillating mechanism including a rotary member, means for rotating the same, a block carried by the rotary member and movable across the axis of rotation thereof, a thrust link having pivotal connection with said block, a stationary pivotal connection for the other extremity of said link, and an adjusting member supported on the rotary member and adjustable relative thereto about the axis thereof, there being operative connection between said adjusting member and said block whereby the latter may be moved toward and from the axis of the rotary member by adjustment of said adjusting member.

"2. In a fan, an oscillating mechanism including a rotary member, means for rotating the same, a block carried by the rotary member and movable relative thereto, a thrust link having pivotal connection with said block, a stationary pivotal connection for the other extremity of said link, an adjusting member carried by the rotary member and adjustable relative to said block and said rotary member about the axis of the latter, and an operative connection between said adjusting member and said block whereby the point of connection of the link on the block may be moved into and out of the rotary axis of the rotary member.

"3. In a fan, an oscillating mechanism comprising the combination of a rotary member, means for driving the same, an adjusting member supported by said rotary member and rotatable concentrically relative thereto, a block carried by the rotary member and movable transversely thereof, an operative connection between the adjusting member and said block whereby the latter may be moved relative to the rotary member by rotation of the former, and a thrust link having pivotal connection at one end with said block and at the other end with a stationary mounting.

"4. In a fan, an oscillating mechanism including the combination of a rotary member, means for rotating the same, an adjusting member adjustable about the axis of the rotary member, a block adjustable spacially relative to the axis of the rotary member, an operative connection between the adjusting member and the block whereby the latter may be moved by adjustment of the former, and a thrust link having pivotal connection at one extremity with the block and at the other extremity with a fixed mounting."

We here reproduce Figures 1, 2, 3, 4, and 5 of the patent drawings:

The elements included in claim 1 are:

(1) A rotary member. Its parts are shown in Figures 1 and 2 of the drawings and are marked 5 and 7. It consists of a shaft connected with the operating mechanism driven by the motor of the fan and a wheel or disk at the lower end of the shaft.

(2) Means for rotating the same. This is the driving mechanism, which comprises a worm wheel and a pinion and a gear by which the shaft 5 is driven from the rotor shaft 2 at a reduced speed.

(3) A block carried by the rotary member and movable across the axis of rotation thereof. This part is marked 12 in the patent drawings. The wheel at the lower end of the shaft of the rotary member has a slot across the face thereof. The block carried by the rotary member slides in this slot between the axis and the circumference of the wheel.

(4) A thrust link having pivotal connection with the block. This is the part marked 8 in the drawings. One end of it is pivotally connected with the block 12 by means of a pintle screw 22.

(5) A stationary pivotal connection for the other end of the link. This is the connection between the link and a stationary part of the fan, and is shown in the form of a screw at the lower part of Figure 2 of the drawings and in the plan at the right of Figure 3 of the drawings.

(6) An adjusting member supported on

the rotary member and adjustable relative thereto about the axis thereof. This is the member *15* that is supported on the rotary member or carried by it. It has a circumferential movement upon a common axis with the rotary member.

(7) The operative connection between the adjusting member and the block whereby the block is moved towards and away from the axis of the rotary member by movement of the adjusting member. This connection is provided by a slot in the block and a pin mounted on the adjusting member that engages the slot. The adjusting member revolves about the center of rotation of the rotary member. When the adjusting member is revolved, the pin moves in the slot and carries the block back and forth from the axis to the circumference of the wheel of the rotary member.

Claims 2, 3, and 4 are so similar to claim 1 that a detailed analysis thereof is unnecessary.

The patented device is an extremely simple and efficient construction, by which the crank arm may be set at zero, and at practically any point between zero and the maximum limit of throw, by the direct movement of the block *12*, accomplished through the simple circumferential movement of the adjusting member.

The results produced are:

.(1) Practically infinite adjustment in the extent of oscillation of the fan; (2) simplicity in construction; (3) freedom from disorder; (4) freedom from danger of accident; (5) ease of adjustment.

Because of the coaxial relationship between the adjusting member and the rotary member, which results in the adjusting member retaining a fixed position in relation to the rotary member, the fan may be conveniently adjusted by the operator, either while stationary or while in operation. In other words, the adjusting member and the rotary member operate concentrically, and therefore, in making an adjustment, the two members have a common movement. This is a distinct improvement over the prior art, because, in all the fans shown in the prior art, the adjusting member travels in an eccentric path in relation to the rotary member, and the operator is confronted with a double movement, to which he has to adapt his hand and arm in making an adjustment.

The commercial device of the patent in suit has attained a marked success. The sales for the years 1919 to 1925, inclusive, aggregated $4,500,000.

The defenses urged are:

1. Invalidity of the claims based upon the following contentions:

(a) That there is no combination.

(b) That the sole improvement is in the adjustable crank disk.

(c) Anticipation in the prior art.

(d) Lack of patentable novelty.

2. Noninfringement.

[1, 2] The primary contention of counsel for defendant is that the sole distinction between the patent in suit and the prior art resides or is found in the specific adjustable crank disk of the patent in suit. Counsel for defendant say that the patent contains two sets of claims, 6 and 7, directed to a crank disk per se, and 1 to 4, inclusive, directed to a combination including the specific crank disk aggregated with the elements of an oscillating mechanism, that such combination is old in the prior art, and that the only distinction between the prior art and the patent in suit is the specific crank disk employed in the latter. Arguing from this premise, they say the patentable subject-matter, if any, is not in the combination, but in the specific adjustable crank disk, and that it therefore follows that the claims directed to the combination cannot be sustained. An examination of the patent discloses that claims 6 and 7 are for a combination of elements, and that they were undoubtedly granted as such by the Patent Office. The issuance of the patent raises the presumption that these claims are valid combinations. Johnson Automobile Lock Co. v. Noser Instant Auto Lock Co. (C. C. A. 8) 9 F.(2d) 265, 267; Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Wilkins Shoe-Button Fastener Co. v. Webb (C. C.) 89 F. 982, 996; Schumacher v. Buttonlath Mfg. Co. (C. C. A. 9) 292 F. 522; Zip Mfg. Co. v. Pusch (C. C. A. 8) 2 F.(2d) 828; National Hollow B. B. Co. v. Interchangeable B. B. Co. (C. C. A. 8) 106 F. 693, 707. The elements included therein are a crank disk, a block, an adjusting member, having a common axis with the rotary member, and a connection between the block and the adjusting member. This combination of elements produces in a very simple but highly efficient and desirable way a practically infinite adjustment of the crank pin from the center to the circumference of the disk. Furthermore, if the introduction of this adjustable crank disk, considered as one element, into the combination of an oscillating electric fan, itself a recognized combination, produced through the coaction of all the elements, an entirely new and useful result or an old result in a new, more facile, economical, and efficient way, it constituted inven-

tion. Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co. (C. C. A. 8) 215 F. 362, 369; New York Scaffolding Co. v. Whitney (C. C. A. 8) 224 F. 452, 456; National Hollow B. B. Co. v. Interchangeable B. B. Co. (C. C. A. 8) 106 F. 693, 706, 707.

On the contention of anticipation, we will consider only the prior patents, mainly relied on by counsel for the defendant. The Eck patent, No. 751,484, and the Avery patent, No. 1,188,384, may be considered together. In the Eck patent, there is a slot across the face of the crank disk. At regular intervals in this slot, are screw holes. The crank pin is attached to a block which fits in this slot. The block is held in place in the slot by means of a screw and such screw holes. It is adjustable by unscrewing this screw and engaging it in different screw holes along the slot. In the Avery patent, the adjustment of the crank pin is effected in a way similar to that employed in the Eck patent. A radial groove is cut in the face of the crank disk. A nut of proper size to fit this groove is placed therein. This nut is held in place by a plate attached to the face of the crank disk. This plate contains a slot which corresponds to the groove in the crank disk, of sufficient width to permit a screw to pass through the plate and engage the nut. The crank pin or bearing post has a screw at one end. This screw end passes through a bushing, and then through the slot in the plate into the nut. When the screw is tightened, the bushing engages the plate on one side, and the nut engages the plate on the other side, and thus the crank pin is held in position. By unloosening the screw the crank pin may be moved to different locations from the center to the circumference of the crank disk, and thus adjustment of the throw of the crank pin may be effected. These devices differ from the patent in suit, in that the adjusting member is not movable on a common axis with the rotary member, the number of adjustments are limited, and it would be very difficult to make an accurate adjustment while the fan is operating.

The Dilg patent, No. 1,289,412, and the Zabriskie and Diehl patent, No. 1,115,147, employ, as a means of adjusting the crank pin, a rotary disk, having a fixed axis which is eccentric of the axis of rotation of the rotary member. The crank pin is attached to this disk. The disk is held in selected position by means of a dog which engages notches or teeth in the edge of the eccentric disk. The disk has a projecting knurled head or knob. This knob is grasped by the fingers and the disk moved so as to carry the crank pin to different locations between the center and circumference of the crank disk. The adjustment of the crank pin is limited to a number of selected positions, and practically infinite adjustment is not attained as in the patent in suit. In making the adjustment, the disk to which the crank pin is attached travels eccentrically instead of concentrically with the crank disk, so that in making an adjustment while the fan is in operation two movements take place. From the foregoing, it will be seen that neither of these devices can be easily and accurately adjusted while the fan is in motion, and neither are susceptible of practically infinite adjustment. [3] Counsel for defendant also rely upon the Gould and Eberhardt patent, No. 241,-488. This patent was granted May 17, 1881. It is for an adjustable crank pin. It does not employ the block and groove in the rotary member as in the patent in suit. This device is found in a different art from the patent in suit. It was designed for imparting a reciprocating motion to a heavy metal working machine, and, while it is denominated an adjustable crank pin, the structure shown is a combination of elements for reciprocating the ram of a shaping or metal slotting machine. It is quite apparent, as testified to by plaintiff's experts, that it would have to be redesigned and reconstructed in order to adapt it for use with the oscillating mechanism of a fan. Defendant's witness Schnaus admitted on cross-examination that redesigning would be necessary and that a mechanic of ordinary skill could not redesign it without directions from an expert or skilled designer. The fact that it was not discovered and employed in any prior oscillating fan patents is additional evidence entitled to much weight that it would take more than an ordinary mechanic to so redesign and reconstruct it for that purpose. Blake Automotive Equipment Co. v. Cross Mfg. Co., 13 F.(2d) 30. It is our conclusion that it would take more than the skill of an ordinary mechanic to modify this device for use in the device of the patent in suit, and therefore that the patent in suit was not anticipated by the Eberhardt patent. Wayne Mfg. Co. v. Benbow-Brammer Mfg. Co. (C. C. A. 8) 168 F. 271, 277; Topliff v. Topliff, 145 U. S. 156, 161, 12 S. Ct. 825, 36 L. Ed. 658; Potts & Co. v. Creager, 155 U. S. 597, 608, 15 S. Ct. 194, 39 L. Ed. 275; Hobbs v. Beach, 180 U. S. 383, 390. In Wayne Co. v. Benbow Co., supra, this court said:

"It is a familiar rule that the application of an old machine or device, found in

an analogous art, without substantial modification, to a new use, is not invention or patentable where its applicability would occur to a person of ordinary mechanical skill. On the other hand, such an application is invention and is patentable where its applicability would not be perceived by a person of ordinary mechanical skill, where it would not perform the function requisite for the new use without substantial modification, and where it was not designed by its maker, nor adapted, nor actually used, to perform such functions."

[4] Are claims 1 to 4 patentable combinations?

The applicable principles of law are well settled by the adjudicated cases.

In Hailes v. Van Wormer, 20 Wall. 353, 368 (22 L. Ed. 241), the court said:

"It must be conceded that a new combination, if it produces new.and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements."

See, also, Palmer v. Corning, 156 U. S. 342, 15 S. Ct. 381, 39 L. Ed. 445; Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 432, 433, 38 S. Ct. 547, 62 L. Ed. 1196.

In National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (C. C. A. 8) 106 F. 693, 706, 707, the court said:

"The second claim of the first patent to Hien is for a combination of old mechanical elements in a new way. It is not for new elements, but for a new method of combining old elements; and a new combination of old elements, whereby a new and useful result is produced, or an old result is attained in a more facile, economical, and efficient way, may be protected by patent as securely as a new machine or composition of matter. Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Thomson v. Bank, 53 F. 250, 252, 3 C. C. A. 518, 520, 10 U. S. App. 500, 509."

See, also, Ottumwa B. C. Loader Co. v. Christy B. C. Loader Co., supra; New York Scaffolding Co. v. Whitney, supra; Disc Grader & Plow Co. v. Austin Western Road Machinery Co. (C. C. A. 8) 254 F. 430, 433; Minneapolis, etc., Co. v. Barnett & Record Co. (C. C. A.) 257 F. 302, supra; Sodemann Heat & Power Co. v. Kauffman (C. C. A. 8) 275 F. 593, 596; St. Louis Street Flushing Machine Co. v. American Street Flushing Machine Co. (C. C. A. 8) 156 F. 574, 576; Frey v. Marvel Auto Supply Co. (C. C. A. 6) 236 F. 916, 919; Zip Mfg. Co. v. Pusch, supra.

In Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf B. Co. (C. C. A. 6) 230 F. 120, 127, the court said:

"If every element was old, invention would still exist if the combination either produced a new and useful result or effected an old result in a new and materially better way."

In Ohmer Fare Register Co. v. Ohmer (C. C. A. 6) 238 F. 182, 190, the court said:

"In order to escape aggregation, it is not necessary that all the constituents so enter into the combination as to coact all the time with all the others or change the mode of connection with every other. It is sufficient that the elements so coact that as a consequence of their union a new and useful result, and not a mere aggregation of several results, follows."

In Willard v. Union Tool Co. (C. C. A. 9) 253 F. 48, 53, the court said:

"Nor is it necessary that the action of the elements be simultaneous. Pelton Waterwheel Co. v. Doble, 190 F. 760, 111 C. C. A. 488; Burdett-Rowntree Mfg. Co. v. Standard Plunger E. Co. (C. C.) 196 F. 43; Novelty Glass Mfg. Co. v. Brookfield, 170 F. 946, 95 C. C. A. 516; Krell Auto Grand Piano Co. v. Story & Clark Co., 207 F. 946, 125 C. C. A. 394. Nor is it necessary that one of the constituent elements shall so enter into the combination as to change the action of the others. International Mausoleum Co. v. Sievert, 213 F. 225, 129 C. C. A. 569. It is sufficient if there be some joint operation performed by the elements producing a result due to their co-operative action."

See, also, Pelton Waterwheel Co. v. Doble (C. C. A. 9) 190 F. 760; New York Scaffolding Co. v. Whitney (C. C. A. 8) 224 F. 452, 458; National Cash Register Co. v. American Cash Register Co. (C. C. A. 3) 53 F. 367, 371; International Mausoleum Co. v. Sievert (C. C. A. 6) 213 F. 225, 229.

[5] An examination of claims 1 to 4, inclusive, in the light of the principles above stated discloses, we believe, that they are valid combinations. The block, the adjusting member operating on a common axis with the rotary member, the connection between the adjusting member and the block, together with the ordinary elements of the rotor and oscillating mechanism of an electric fan, have all been combined in a new relationship in the patent in suit, so as to produce by their co-action a new and useful result, to wit: Practically infinite adjustment in an ad-

justable oscillating electric fan. Practically infinite adjustment characterizes the result as new. In addition to this, although prior patented combinations had produced adjustable oscillating fans, the patent in suit produces that old result in a "new and materially better way"—in a "more facile, economical and efficient way."

We conclude that claims 1 to 4, inclusive, are valid.

Does the device of the defendant infringe? It employs every element found in claims 1 to 4, inclusive. The only difference in structure is in the adjusting member. We have already explained how the adjusting member operates in the patent in suit. In defendant's device, the pin, instead of being in the adjusting member is in the movable block. This pin connects with a spiral cut in the face of the adjusting member. When the adjusting member is revolved, the pin in the block travels in the groove of the spiral and the block is carried back and forth between the axis and the edge of the crank disk. It will thus be seen that the adjusting member in defendant's device operates on a common axis with the crank disc and adjusts the crank pin in substantially the same way as the device in the patent in suit. The principle employed, the mode of operation and the result attained is exactly the same in both devices. The change is only in form. The element employed in defendant's device is a mechanical equivalent of the element of the patent in suit. Lourie Implement Co. v. Lenhart (C. C. A. 8) 130 F. 122.

We find no error in the record. The decree is affirmed, with costs.