### JOHNSTON v. DAVENPORT BRICK & TILE CO.

(District Court, S. D. Iowa, Davenport Division. April 3, 1916.)

1. PATENTS ☞168(2)—CONSTRUCTION—ESTOPPEL BY PROCEEDINGS IN PATENT OFFICE.

While a patentee, who acquiesces in the rejection of his claim, and abandons it on references cited in the Patent Office, and accepts a patent on an amended claim, is thereby estopped from maintaining that the latter claim covers the combination shown in the references, and that it has the breadth of the abandoned claim that was rejected, that is the limit of the estoppel.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 244; Dec. Dig. ☞168(2).]

2. WORDS AND PHRASES—"ADJACENT."

The word "adjacent" is not inconsistent with something intervening, but is to be construed with reference to its context (citing Words and Phrases, First and Second Series, Adjacent.)

3. PATENTS ☞226—INFRINGEMENT.

Directions given to purchasers of an infringing article, made and sold by a defendant, as to the manner of its use, cannot evade infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 357; Dec. Dig. ☞226.]

4. PATENTS ☞328—VALIDITY AND INFRINGEMENT.

The Johnston patent, No. 1,044,533 for forms for openings in buildings *held* valid and infringed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

In Equity. Suit by David S. Johnston against the Davenport Brick & Tile Company. On final hearing. Decree for complainant.

Orwig & Bair, of Des Moines, Iowa, for complainant.

C. C. Bulkley, of Chicago, Ill., and R. B. Cook and Walter M. Balluff, both of Davenport, Iowa, for respondent.

WADE, District Judge. There can be no serious question that the patent issued to the plaintiff is valid. It is the contention of the defendant that it is extremely limited in its effect, because (a) of the language used, and because (b) of the proceedings in the Patent Office. So far as the proceedings in the Patent Office are concerned, I do not think that the plaintiff is estopped from claiming the full benefit of all language used in his claims.

[1] The effect of rejection of claims and amendment thereof is fully discussed in the cases cited by counsel for the defendant, and especially in the recent case of New York Scaffolding Co. v. Whitney, 224 Fed. 452, 140 C. C. A. 138, in which Judge Sanborn again emphasizes and amplifies the rule that:

"While a patentee who acquiesces in the rejection of his claim, and abandons it on references cited in the Patent Office, and accepts a patent on an amended claim, is thereby estopped from maintaining that the latter claim covers the combination shown in the references, and that it has the breadth of the abandoned claim that was rejected, that is the limit of the estoppel. One who does not abandon, but insists upon and sustains, his first claim, is not estopped, and one who acquiesces in the rejection of his claim, because it is said to be anticipated by other patents or references, is not thereby estopped from claiming and securing by an amended claim every novel and useful improvement that is not described in those references."

Under this rule, and under the language used in amending the claim, I do not think there is any estoppel against a construction which gives to the language used the full meaning thereof.

Now, as to the language used: It is strenuously insisted that because in the claims it is said, "Said rods being designed to rest adjacent to the frame of a building, and to hold the same spaced apart from the central portion of the channel bar," that the plaintiff's patent only covers the use of the rod when the end of the wall is built up against the rod; and it is contended that the defendant, by directing such construction as will end the wall within the channel bar at a point where the wall will not touch the rod, avoids infringement.

[2] To hold that the language of the claims in patent in suit limits the use of the device to a construction in which the tile or brick comes in contact with the rod, places too narrow a meaning upon the word "adjacent."

"We realize that the word 'adjacent' does not at all times mean adjoining or abutting; but it is many times so used, and the purpose of its use is to be known from the context. Synonyms of the word are 'abutting,' 'adjoining,' 'attached,' 'beside,' 'bordering,' 'close,' 'contiguous,' 'neighboring,' 'next,' and 'nigh.'" Wormley v. Board of Supervisors, 108 Iowa, 232, 78 N. W. 824.

"The word 'adjacent' is not inconsistent with something intervening. The word 'adjoining' implies a closer relation; its primary meaning, to 'lie next to,' 'to be in contact with,' excluding the idea of any intervening space. Yard

v. Ocean Beach Ass'n, 49 N. J. Eq. (4 Dick) 306, 24 Atl. 729, 731; Peverelly v. People, 3 Parker, Cr. R. (N. Y.) 59, 69." 1 Words and Phrases, 185, 186.

"That which is 'adjacent' may be separated by some intervening object; that which is 'adjoining' must touch in some part, while that which is 'contiguous' must touch entirely on one side. Baxter v. York Realty Co., 128 App. Div. 79, 112 N. Y. Supp. 455, 456 (quoting and adopting the definition in Crabb's English Synonyms)." 1 Words and Phrases (Second Series) p. 111.

"The word 'adjacent' is at least somewhat indefinite. It means 'to lie near, close, or contiguous.' Webster." Dunker v. City of Des Moines, 156 Iowa, 292, 136 N. W. 536.

Taking the entire proceedings in the Patent Office and the language used in the claims, I do not believe that it was intended to provide for a use and construction which required the end of the wall to be fitted up "snug" against the spacing rod.

It is true that its function is described "to hold the same spaced apart from the central portion of the channel bar," but I think this should be construed to mean that the rod serves as a barrier to extending the ends of the tile or brick into the web of the channel bar. If a wall were to be carefully constructed with reference to a definite termination, at a point one inch within the space between the flanges, the rod would serve no purpose except for anchorage. But as a spacing rod it serves a definite purpose. Workmen might be careless in cutting or breaking tile or brick, but, no matter how careless one might be, the spacing rod prevents any of the tile or brick from being inserted so as to form an obstruction to the proper filling of the space with cement when the wall is finished. Time in adjustment can be saved by this guard against improper extension. There is nothing in the language of the patent, fairly construed, which requires the wall to be built with a uniform ending, or upon exact measurements, because this rod stands as a safeguard so far as the required space is concerned.

Much value is attributed to the solid column or post, with the cement surrounding the rod, which is produced by the construction described by the defendant. The only difference between such column or post, and the column or post produced under the patent of the plaintiff, would be that the rod is more fully and uniformly surrounded by cement; but in either construction the rod to a large extent, if not wholly, would be surrounded by cement, because the evidence shows that, when this wet cement is thrown into the opening, it extends out into the tile, as one of the witnesses explained it, the distance of a foot. So that I cannot hold that, because of the language of the patent, the same structure can be used by an unlicensed person, and infringement avoided, simply by direction to purchasers to insert the brick or tile in such position that they will not touch the rod.

But defendant contends that, under the language of the patent, the rods, in order to infringe, must be "secured to the central portion of the channel bars" direct, as in the plaintiff's construction. With this I cannot agree. The construction used by the defendant, where, instead of having the rod directly fastened to the web of the channel bar, it is fastened to the flanges by a plate riveted to each flange with a rod inserted through a hole in the plate, is to my mind a

mechanical equivalent of the structure described in the patent. Any mechanic who was asked to find a method of fastening different from that used by the plaintiff would readily provide the very thing the defendant is using.

But it is contended that the construction used by the defendant strengthens the flanges. If the flanges needed strengthening, any mechanic would adopt the means employed for that purpose. It is also claimed that the flanges in the defendant's construction are wider than in the plaintiff's construction, but these are details which are not limited by the plaintiff's patent.

[3] It is finally contended that, even if the defendant is using a construction covered by the plaintiff's patent, its direction to purchasers and persons building silos that "all blocks are to be pushed into frame for a distance of one inch only" protects against infringement. I cannot agree that any directions with reference to the use of a patented article which is sold, can evade infringement.

"Infringement is the unauthorized making, using, or selling for practical use, or for profit, of an invention covered by a valid claim of a patent during the life of the patent. It may involve any one or all of the acts of making, using, and selling. It is therefore an infringement for an unauthorized person to make a patented machine for use or for sale, though in fact it is neither used nor sold." 1 Rogers on Patents, 137.

[4] There will be a decree in favor of the plaintiff, enjoining the defendant from infringing as prayed, and, unless the parties can agree upon the matter of damages, the same will be referred to a master by order hereafter made. Counsel for plaintiff will prepare decree and submit it to counsel for defendant, who may file objections to the form thereof, and the same will be submitted for signature; such decree to preserve all proper exceptions.