In the Matter of the Accounting of HERBERT J. HOCKENBERY, as Executor of the Estate of CHARLES E. HULSE, Deceased.

Surrogate's Court, Orange County, September 15, 1947.

*Merel Scheidell* for executor.

*Herbert B. Royce* and *Victor O. Smith* for Jessie D. Watch, legatee.

*P. R. Buttenheim* for Home for Aged Women, residuary legatee.

*Henry G. Arfmann* for Horton Memorial Hospital, residuary legatee.

TAYLOR, S. Decedent was a funeral director. He lived in the hamlet of Westtown and there conducted his business. He owned and occupied a residence property upon which there was a dwelling and a building originally erected to be used as a barn, but used latterly as a garage. Oral testimony has been received to show that much of the decedent's business equipment was kept in the barn or garage, while some of it, being that which was in more or less constant use, was kept in the dwelling.

Paragraph "Fourth" of the will is as follows: "The contents of my home located at Westtown, New York, except my set of dishes and such articles as I may otherwise bequeath herein, I give to Mrs. Jessie D. Watch of Unionville, New York."

The legatee claims this bequest of the will gives to her all the personal property not only in the house but in the barn, while the residuary legatees contend that the bequest carries not just the contents of the dwelling itself but only so much of the personalty in the house as is usually appurtenant to a dwelling.

"Words are symbols, and we must compare them with things and persons and events * * *." (*Matter of Fowles,* 222

N. Y. 222, 232.) Unfortunately, the same word may be used by different people to refer to different things, persons and events, or, in other words, a person when expressing himself in words may more or less set up his own dictionary. Words are necessary to construct a will, but such words ordinarily are to be given only that meaning which the testator intended, or as expressed in *Central Union Trust Co.* v. *Flint* (198 App. Div 703, 707), "The provisions of a will with respect to a legacy or bequest are given a broad or narrow construction in order to carry into effect the intent of the testator," and in *Matter of Rothschild* (161 Misc. 888, 889), "while the general rule is that a legacy of the contents of a receptacle passes whatever is contained therein at the time of the death * * *, this general rule is subordinate to the master rule that the intention of a testator must always govern."

Taking this entire will, as we must, there is evident an intention on the testator's part to dispose of all his personal property, other than moneys, securities and the like, and all of his real property by the "Fourteenth" paragraph of his will, and his gift to the residuary legatees of the remaining moneys, securities and the like, and this is indicated by the residuary clause itself which provides for the gift thereof "after the payment of the bequests and legacies provided for above".

Briefly expressed, the question presented is whether the gift of "The contents of my home" is to be given a rather narrow and restricted construction, or a broad interpretation.

It should be noted that the gift is of the contents of "my home" rather than of "my dwelling", or "my house". One's home is something more than the house in which he lives — it includes surrounding grounds, buildings such as garages, storehouses and others used in connection with the occupancy of the property and many other things according to the wealth and fancy of the owner.

In *Chase National Bank* v. *Deichmiller* (107 N. J. Eq. 379), the bequest was "Any and all real estate which I may own * * * and particularly my home known as Brookside Lawn, together with all the furniture, furnishings, household and kitchen utensils and all other chattels used by me and my family in said home." It appeared that Brookside Lawn was a small farm or estate, having on it, in addition to the dwelling house, a barn, garage and chicken houses and also certain chattels in the dwelling house itself, to wit, two automobiles, two cows, some chickens and certain agricultural machines and

implements, and the question was whether the last-mentioned chattels passed under the quoted provision of the decedent's will. Said the court (pp. 380–381): " * * * the word 'home' means not merely the dwelling house, but the entire residence estate. The words first used — 'furniture, furnishings, household and kitchen utensils,' certainly include *all chattels in the house*; hence 'all other chattels' must mean chattels other than those in the house." (Italics supplied.)

This bequest of which construction is asked must be distinguished from bequests of "personal effects", "household furniture" and the like, for these expressions have more or less definite limited meanings, and even when such expressions are followed by words of more inclusive meanings, the rule of *ejusdem generis* is applicable. (*Matter of Campbell,* 171 Misc. 750, affd. 261 App. Div. 899.) Here, the word used was "contents" which is a more comprehensive word than "household effects" and the like, and the same may be said with respect to home as distinguished from dwelling house, residence and the like.

The "Fourth" paragraph of decedent's will is construed to give to the legatee therein named all of the personal property upon or in the decedent's real property, in the hamlet of Westtown, except, of course, such articles as the decedent specifically bequeathed by his will.

Construction is also asked of the "Fourteenth" paragraph of decedent's will, which is as follows: "To Frank House of Unionville, New York, I give and devise my home and the property upon which it stands and adjacent thereto, situated in the Village of *Unionville,* New York, to belong to him absolutely ".

There was oral testimony that the decedent's real property was located at Westtown and not at Unionville and all parties to this proceeding so conceded. The decree may construe this clause as devising to the devisee, Frank House, the decedent's property at Westtown.

It appears that in addition to the so-called home property this decedent owned what is now a vacant lot (the barn or building thereon having since burned) on the other side of the highway and some two hundred feet from the so-called home property, and the question here is whether this devise carries with it the vacant lot mentioned. As indicated heretofore in the construction of the "Fourth" paragraph of the decedent's will, the Surrogate is of the opinion that the decedent intended to be rather comprehensive in his bequests and finds with respect to

this "Fourteenth" paragraph that the decedent intended by it to devise to the legatee, Frank House, the vacant lot, together with the so-called home property.

It is very earnestly contended that a vacant lot cannot be said to be " adjacent" to the other property. Here, again, we must give to the words used such construction as the testator intended, but aside from that the words themselves are comprehensive enough to include the vacant lot, passing for the moment the testator's own individual construction of them.

In *Johnston v. Davenport Brick & Tile Co.* (237 F. 668, 669–670) it was said: " ' We realize that the word " adjacent " does not at all times mean adjoining or abutting; but it is many times so used, and the purpose of its use is to be known from the context. Synonyms of the word are " abutting," " adjoining," " attached," " beside," " bordering," " close," " contiguous," " neighboring," " next," and " nigh ". * * * The word " adjacent " is not inconsistent with something intervening. The word " adjoining " implies a closer relation; its primary meaning to " lie next to," " to be in contact with," excluding the idea of any intervening space. * * * That which is " adjacent " may be separated by some intervening object; that which is " adjoining " must touch in some part, while that which is " contiguous " must touch entirely on one side.' "

In *Hanifen* v. *Armitage* (117 F. 845, 851) this comment was made: " The word ' adjacent ' even in its strictest sense, means no more than ' lying near, close, or contiguous, but not actually touching.' Webst. Dict. There are degrees of nearness, and when you want to express the idea that a thing is immediately adjacent you have to say so * * *."

Like conclusions with respect to the meaning or use of the word " adjacent " were reached in *Harrison* v. *Guilford County* (218 N. C. 718) and *People ex rel. Sackmann* v. *Keechler* (194 Ill. 235).

In *Matter of O'Brien* (26 N. Y. S. 2d 519) there was a devise to decedent's wife of " the use of my dwelling house with the land adjacent thereto ". It appeared that there was a dwelling on certain lots on a given map and that later the decedent purchased lots across the street in order that his view of the Hudson River should not be obstructed. This case is parallel to the instant case, and the Surrogate said (pp. 520–521): " His language ' with the land adjacent thereto ' would seem to indicate that he intended the gift to include all lands used in connec-

tion with his residence. The word ' adjacent ' has been defined to mean ' near at hand ' (Funk & Wagnalls) and does not necessarily mean contiguous."

The Appellate Division in this Department in *Baxter* v. *York Realty Co.* (128 App. Div. 79, 80) had occasion to comment upon the use of the word " adjacent " and quoted as follows from a well-known work: " Mr. Crabb, in his English Synonymes, classifies together ' adjacent,' ' adjoining ' and ' contiguous,' and, after giving the etymology of these words, illustrates the difference between them in the following manner: ' What is adjacent may be separated altogether by the intervention of some third object; "they have been beating up for volunteers at York, and the towns adjacent, but nobody will list ".— Granville. What is adjoining must touch in some part: " As he happens to have no estate adjoining, equal to his own, his oppressions are often borne without resistance." — Johnson. What is contiguous must be fitted to touch entirely on one side: " We arrived at the utmost boundaries of a wood, which lay contiguous to a plain." — Steele. Lands are adjacent to a house or town; fields are adjoined to each other; houses contiguous to each other.' "

The construction given to the " Fourteenth " paragraph of the decedent's will then is that it was testator's intention to devise to the named devisee his real property at Westtown, which consisted of the so-called home property and the vacant lot across the street some two hundred feet distant.

Decree may be settled on five days' notice or by consent.